CHARLES SVITAK, APPELLEE, V. SUN INDEMNITY COMPANY,
APPELLANT.

285 N. W. 604

FILED MAY 12, 1939. No. 30553.

*Cook & Cook* and *Walter, Flory & Schmid*, for appellant.

*Wagner, Wagner & Albert, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, MESSMORE and JOHNSEN, JJ.

PAINE, J.

Charles Svitak brought suit against Earl V. Hardy for injuries under the guest law. A jury was waived, and judgment entered by the court, and an execution issued on said judgment was returned unsatisfied, and thereupon said Svitak brought the suit at bar against the Sun Indemnity Company of New York, defendant, and secured verdict in the sum of $2,639.48, for which judgment was entered. The Sun Indemnity Company defended on the ground that Svitak was not, at the time of the injuries, a guest of Hardy, but was an employee, and any recovery must be had under the workmen's compensation law. From an adverse judgment, the Sun Indemnity Company appealed.

The facts may be briefly stated as follows: Svitak was an employee of Hardy, who operated a filling station at Columbus, Nebraska, under lease from the Continental Oil

Company, which company was giving a sales meeting for its dealers and their salesmen at the Paxton Hotel in Omaha, ostensibly to promote the sale of a new lubricant.

Svitak's hours of employment would terminate for the day at 6:00 p. m., but at 4:00 p. m. on April 5, 1937, Hardy told him he was through for the day, and invited him to go along to Omaha for the meeting. They arrived at the hotel in Hardy's Oldsmobile about 6:00 p. m., and joined the group, where they had lunch, including drinks, and remained until the meeting was over, around 11:00 p. m. They then started for Columbus, but stopped at a night club and drank liquor; then, resuming their trip to Columbus, they arrived at a second night club, where they found congenial friends returning from the same meeting, and they drank liquor and were entertained at this night club for several hours. They then resumed their return trip to Columbus, and at about 6:30 in the morning of April 6, in the eastern outskirts of Columbus, while traveling on Highway No. 30, Hardy drove his car on the wrong side of the road and directly into a truck. As a result of the injuries sustained, both Hardy and Svitak were confined in a hospital. Svitak's injuries proved the more serious, his jaw being broken in several places, seven teeth knocked out, and two of the teeth of his lower jaw driven up into the roof of his mouth.

Immediately upon learning of the accident, the Sun Indemnity Company, in which Hardy carried liability insurance upon his automobile, sent two young attorneys from Fremont to Columbus, where they arrived shortly after the accident, and interviewed the injured parties at the Lutheran Hospital, and succeeded in getting them to sign statements in regard to the details of the accident.

Morris D. Cook, one of these men, testified that he told Mr. Hardy that he was a member of the law firm of Cook & Cook, of Fremont, representing the insurance company, and that he had with him a portable typewriter, which he arranged close to the bed, and asked them to give all the facts of the accident. He testified that he would ask Mr.

Hardy a question, that Hardy would confer with Svitak, and then he would write it down; that Svitak had difficulty in talking, with his teeth out and jaw injured; that it required from 45 minutes to an hour to secure this statement at the hospital; that they reached the hospital about 11:00 a. m.; that they also secured a statement from Mr. Collins, the driver of the truck which was run into by Hardy.

Later on they supplemented their first statements by additional statements, taken on April 24, in which statements Svitak said that attendance at this meeting was not required of him, but Hardy had received an invitation, and they went; that at the meeting they each had a glass and a half of beer; that they stopped at two night clubs on the way home, and Svitak said in the statement that he had a whisky and soda at one club and a Scotch and soda at the other; that the first night club they attended was called "Showboat;" that they finally left Omaha between 3:00 and 3:30 a. m., and that Svitak went to sleep, and does not recall a thing that happened from the time he went to sleep until he woke up in the Lutheran Hospital in Columbus about 7:00 a. m., and had no recollection of walking into the hospital; that he had not notified the compensation commissioner of the accident or of his injury.

Hardy said that, on the way back, before he got to Fremont he felt sleepy, and got out and walked around the car, and that he felt sleepy again just before the accident, and really remembered little or nothing after he passed through Richland, some nine miles east of Columbus.

In the first action, which was brought by Svitak against Hardy, there was no defense, Hardy testifying for Svitak. Hardy refused to verify an answer which the insurance company had prepared for him, setting out as the defense that the injuries received would come under the workmen's compensation law of Nebraska, and not under its liability policy, and as Hardy refused to verify this answer, the insurance company refused to defend the suit.

We find a rather acceptable statement of the law in this

matter set out in *Royal Indemnity Co. v. Morris*, 37 Fed. (2d) 90, where it is said: "It may be added that the duty of the insured in respect of permitting a defense in his name is not susceptible to precise general definition. He is not to be a mere puppet in the hands of the insurer; he is under no obligation to permit a sham defense to be set up in his name, nor can he be expected to verify an answer which he does not believe to be true; he cannot evade personal responsibility, and hence is not bound to yield to any demand which would entail violation of any law or ethical principle; but he cannot arbitrarily or unreasonably decline to assist in making any fair and legitimate defense."

The insurance company contends that, after the statement had been given on April 24, Hardy discovered for the first time that his policy did not cover compensation liability, and that thereupon a conspiracy was entered into between Hardy and Svitak to prove that the relationship of host and guest existed at the time of the accident, and not that of employer and employee; that when their depositions were taken before the trial they admitted the truth of the written statements they had made as to the relation of employer and employee, and only objected to some immaterial matters in the statement they had signed.

In this case we cannot agree with the defendant that Hardy and the plaintiff concocted a deliberate, fraudulent plan to beat the defendant company. The statements taken a few hours after the accident were taken at a time when neither man was in possession of all his faculties. If a later statement made by Hardy and his testimony on the witness-stand were not all the defendant expected, they may be partly accounted for by the fact that Hardy testifies that the answer the insurance company asked him to sign "had several terms in there that I absolutely didn't believe and I refused to sign," and he doubtless felt aggrieved at their conduct.

The insurance policy he had purchased of the company required in "Insuring Agreements," par. 2(a), that it defend a suit against him, "even if such suit is groundless,

false or fraudulent," and this they failed to do. It does not appear that Hardy testified falsely on the trial, and his testimony gives a version of the accident which the jury accepted. We do not believe that Hardy's alleged "lack of cooperation" is sufficient to relieve the defendant from the judgment obtained by Svitak. *Guerin v. Indemnity Ins. Co.*, 107 Conn. 649, 142 Atl. 268; *Marley v. Bankers Indemnity Ins. Co.*, 53 R. I. 289, 166 Atl. 350.

However, this matter of lack of cooperation was set out at length in instruction No. 1, offered by defendant and given by the court, stating definitely that, if it was the duty of Hardy to have signed and verified the answer prepared by the insurance company, and he refused to do it, then he breached the terms of his policy, and plaintiff cannot recover. It was a jury question, submitted under the defendant's very strong instruction, and the jury found adversely to the contentions of the defendant.

Special emphasis is placed upon the giving of instruction No. 8 by the court, the first paragraph of which instruction was taken from instruction No. 8 offered by the defendant and refused, and reading as follows. "The jury is instructed that if you find that Hardy invited or requested plaintiff to attend said meeting at Omaha to enable plaintiff to receive instructions in handling the products of Hardy then the relationship of employer and employee existed even if you find that the plaintiff was under no compulsion to attend said meeting." The court then added on its own motion the last paragraph: "If on the other hand you find that Hardy invited the plaintiff to attend said meeting for the purpose of pleasure and so that he could enjoy his companionship on the trip and that the meeting in Omaha was a mere pretext or excuse for making the trip and not the real purpose thereof and that the attendance at said meeting was a mere incident of the trip and that it was not the purpose of the trip for plaintiff to receive instructions in handling the products of Hardy, then and in such case you would be justified in finding that plaintiff was the guest of Hardy on said trip and not his employee on said trip."

This instruction No. 8 goes directly to the heart of the case, the defendant claiming that the sole and only purpose of attending this meeting was for the benefit to be received from the instructions in the handling of the new products, and that Hardy as the employer took Svitak, his employee, along to qualify him to better sell these goods; that it was a purely business trip, on which the relationship of employer and employee continued until the time of the accident. Svitak insists it was just a pleasure trip; that the two men were friendly, and enjoyed such excursions, and that he went along for the entertainment, as the guest of Hardy.

The counsel for plaintiff insists that the dealers were given a party at the Paxton Hotel; that it was an entertainment, a drinking party; that it was given several times a year; that the defendant's lawyers, the same morning after the accident, went into the sick-room, without getting the consent of a doctor, and took statements while the injured men were under opiates, with high temperature, and did not know what was going on, and that such conduct was very objectionable.

Hardy testified that it was not a business trip in any sense; that Svitak was not required to go with him, but that he told him he was driving in and would be glad to have him go along. Hardy was asked on cross-examination whether the instructions at such a meeting would not promote sales in handling products, and his answer was: "No; I went down a lot for the trip—to get away from the business, to relieve the monotony;" and he always maintained that it was purely a pleasure trip. He said that Svitak's duties ended at 4:00 o'clock, when they left, because he told him he could take the time off.

In *Flynn v. Lewis*, 231 Mass. 550, 121 N. E. 493, 2 A. L. R. 896, it was held that no relation of master and servant existed, but that the plaintiff when injured was being transported by the defendant for their mutual companionship and enjoyment. Whether the plaintiff was in the service of the defendant when injured, or was a guest, were facts for the jury to determine, and a verdict directed for the defendant was held to be error.

In the case of *McKnight v. General Casualty Ins. Co.* (1931) 44 B. C. 1, 3 Dom. Law Rep. 476, it was held that an insured may sue the insurer under the indemnity clause of the policy, notwithstanding the insured has not paid the judgment recovered against him.

In *Labatte v. Lavallee,* 258 Mass. 527, 155 N. E. 433, plaintiff testified that just before the store closed, in which she was an employee, the proprietor requested her to go with her to see a woman whom her proprietor wanted to consult concerning business, and she wished the plaintiff to overhear what was said. Arriving there, the conversation was a private interview, which plaintiff did not hear, and she had no interest in the conversation. Defendant, in returning plaintiff to Lowell, ran into a telegraph pole and injured plaintiff. The parties were not engaged in a common enterprise. The plaintiff a moment before the accident said: "Don't go so fast, May, be careful, we have a post just as we go around the curve." But defendant did not slacken her speed, and drove head-on into the pole, and plaintiff was injured. The trial court in this action in tort directed a verdict for defendant. The supreme judicial court of Massachusetts said that, as the questions of due care of plaintiff and negligence of defendant, and whether plaintiff was in the service of the defendant when injured, were facts for the jury to decide, a verdict for the defendant could not rightly have been directed. In the case at bar, this jury question was submitted to the jury under very complete instructions.

From a reading of the evidence and an examination of the authorities, it appears that Svitak was invited by Hardy to attend a "pep" meeting at the Paxton Hotel, where representatives of the Continental Oil Company described a new kind of grease being put on the market; that there were also food and drinks. The meeting broke up about 11:00 p. m., and if they had immediately driven home they would have arrived about 1:00 a. m.

But that is not what happened in the case at bar, for the facts clearly show that, in the place of promptly returning

home from this trip, it was interrupted by the wish of Hardy to visit two night clubs, in which it would appear four hours or more were taken up in drinking, conviviality, and entertainment, all enjoyed in the company of friends, and upon leaving the last of these night clubs Svitak dropped down in the seat and promptly went to sleep, and appears to remember nothing until he woke up in the hospital after the accident. Hardy was more or less intoxicated, he could scarcely keep awake, and at one time stopped the car and walked around to wake up, and was doubtless in somewhat of a dazed condition when he ran head-on into the truck on the wrong side of the road. The visiting of the night clubs by these two men, and enjoying the entertainment provided therein, is important.

In any event, the question of whether the relation of host and guest, or employer and employee, existed at the time of the accident was a question of fact, which was properly submitted to the jury under the instructions, and under the disputed facts in the case a court would not have been justified in taking the case from the jury and instructing a verdict for the defendant.

We cannot extend this opinion to discuss all of the errors of law alleged to have been prejudicial to the defendant in the trial of this case, but from an examination of the entire record we have reached the conclusion that the jury were warranted in finding that the plaintiff was entitled to recover a judgment against the defendant on the ground that the plaintiff was the guest of Hardy at the time of the accident, and the judgment is

AFFIRMED.