T.I.M.E., INCORPORATED V. MARYLAND CASUALTY COMPANY

No. A-6075. Decided March 13, 1957.
Rehearing Overruled April 17, 1957.
(300 S.W. 2d Series 68)

*Burges, Scott, Rasberry & Hulse* and *William F. Smith,* all of El Paso, for petitioner.

*Kemp. Smith, Brown, Goggin & White* and *Tad R. Smith,* all of El Paso, for respondent.

MR. JUSTICE CALVERT delivered the opinion of the Court.

In this case and on this appeal there are two major legal problems, one substantive and one procedural, as follows: Was Alphonse Munroe an insured within the terms of a policy of garage liability insurance issued by respondent? If he was not, did respondent insurer lose its right to assert that fact as a defense to a suit on the policy by failing to plead that he was not? The trial court and the Court of Civil Appeals have held

that Munroe was not an insured and that respondent did not lose its right to assert that fact as a defense. See 294 S.W. 2d 746. We agree with the first holding but disagree with the second.

Respondent's policy of insurance was issued to Citizens Finance Co., Inc., DBA El Paso Motor Company, as the principal insured. The insurance was written on a policy form of "Garage Liability Policy," extended by rider as follows: "Automobile Dealer or Repair shop is extended to include Finance Company and all operations on the premises or elsewhere which are necessary and incidental thereto."

The policy contained four "Coverages" as follows: "A. Bodily Injury Liability," "B. Property Damage Liability," "C. Automobile Medical Payments," and "D. Property of others in Charge of Named Insured." Provision was made in the policy for an insured to purchase "Coverages" against any one or all of three "Hazards": "1. Premises-Operations-Automobiles," "2. Premises-Operations-Automobiles Not owner or Hired," and "3. Elevators." The principal insured purchased and paid for coverages A and B against the hazard "Premises-Operations-Automobiles."

By coverage A respondent agreed: "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined." By coverage B respondent agreed: "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined."

Under a section of the policy captioned "Definition of Hazards" is the following paragraph: "Division 1—Premises-Operations-Automobiles. The ownership, maintenance or use of the premises for the purpose of an automobile dealer, repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto; and the ownership, maintenance or use of any automobile in connection with the above defined operations, and the occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the named insured and used principally in the above defined operations."

The policy insured certain classes of persons other than the principal insured under the following provision:

"III.    Definition of Insured.

"With respect to the insurance under Coverages A, B and D the unqualified word 'insured' includes the named insured and also includes (1) any partner, employee, director or stockholder thereof while acting within the scope of his duties as such, and any person or organization having a financial interest in the business of the named insured covered by this policy, and (2) any person while using an automobile covered by this policy, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. This policy does not apply:

"(a)    To any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the business of such employer; * * *."

On the evening of March 31st, in El Paso, Texas, a Ford automobile covered by the policy was involved in a collision near a street intersection. The Ford was being used and driven by Alphonse Munroe who was employed by El Paso Motor Company but at the time was on a purely private mission. The Ford was so badly damaged that it would not run and Munroe left it over night at the scene of the accident, partly in a traffic lane. The following morning John T. McConnell, El Paso Motor Company's general manager, went to the scene of the accident to make an investigation. While McConnell was sitting in his automobile the driver of one of the petitioner's trucks undertook to negotiate a turn into the street at an excessive rate of speed, struck the standing Ford automobile and overturned on the automobile in which McConnell was sitting, injuring him. McConnell sued petitioner (formerly known as Southwestern Freight Lines) for damages for personal injuries, and petitioner brought Munroe into the suit as a third party defendant. Respondent declined to defend the suit on behalf of Munroe. Judgment was rendered that McConnell recover of petitioner the sum of $3750.00 and, by way of indemnity, that petitioner recover over against Munroe. See Southwestern Freight Lines v. McConnell, Texas Civ. App., 254 S.W. 2d 422, writ refused, and Southwestern Freight Lines v. McConnell, 269 S.W. 2d 427, writ refused, n.r.e. Petitioner paid the judgment in full.

This suit by petitioner against respondent, with Munroe as

an involuntary plaintiff, was brought on the theory that respondent is liable for the sum Munroe is obligated to pay. Respondent is not liable if Munroe was not an insured and if it did not lose its right to defend on that ground. We will first consider whether Munroe was an insured within the terms of the policy.

■ We can find in the language of the policy no basis for holding that Munroe was an insured as to the injuries inflicted on McConnell. Section III of the policy, above quoted, defines and specifies who is an insured. In addition to the named insured, the policy specifies two classes of persons who are insureds. Munroe was not in the first class because, although an employee of the named insured, he was not "acting within the scope of his duties as such." The evidence is undisputed that he was on a private mission at the time of his accident. On the other hand, Munroe was in the second class because his use of the automobile was with permission of the named insured. The jury found, on conflicting evidence, that he had implied permission to use the automobile for the purpose for which he was using it. But there is another relevant provision of Section III. The language immediately following the two classes limits their scope. It provides, in subsance and in effect, that an employee is not an insured when he injures a fellow employee if the fellow employee at the time of the injury is acting in the course of his employment and is injured in an accident arising out of the business of the employer. The record discloses, indisputably, that McConnell was an employee of El Paso Motor Company at the time of his injury, and the parties have stipulated that at such time he was engaged in performing duties of his employment. The language of the policy thus appears clearly to exclude Munroe as an insured under the facts surrounding the injury to McConnell.

Petitioner contends that Munroe was not excluded as an insured because in driving the Ford automobile he was not acting in the course of his employment. The argument made is that although Munroe was employed by the named insured he was, nevertheless, not an "employee" of the named insured within the meaning of paragraph (a) unless his use of the automobile was within the scope of his employment. In support of this contention petitioner cites Lumber Mutual Casualty Ins. Co. v. Stukes, 164 F. 2d 571; Svitak v. Sun Indemnity Co., 136 Neb. 303, 285 N.W. 604, and Hoosier Casualty Co. v. Miers, 217 Ind. 400, 27 N.E. 2d 342. Lumber Mutual Casualty Co. v. Stukes, involved a policy provision similar to that in the instant policy. One of the crucial questions was whether at the time of injury to an employee of the named insured, occurring in the course of

his employment, the driver of an insured truck was an employee of the named insured or was an independent contractor driving the truck with permission of the principal insured. The court did not hold that the driver, if employed by the principal insured, was not an employee within the meaning of the exclusionary clause of the policy if he was not in the course of his employment. As a matter of fact, the court's opinion indicates a contrary view. The last two cases cited deal with the status of the injured person and not with the status of the operator of the automobile. We do not regard any of the cited cases as analagous.

■ As heretofore noted, Section III makes one employed by the principal insured an insured as to all injured persons in two fact situations: (1) while driving an insured automobile within the scope of his duties, and (2) while actually using the automobile outside of the scope of his duties with permission of the principal insured. As to injuries to fellow employees in the course of their employment, petitioner's interpretation would eliminate as an insured one employed by the principal insured only in the first fact situation. That is hardly the fair import of the language of the exclusionary clause. Paragraph (a) is introduced by the words "This policy does not apply," thus indicating that what is to follow in paragraph (a) is intended to eliminate one employed by the principal insured as an insured in both fact situations. It seems to us that the obvious purpose of paragraph (a) is to relieve the insurer of all liability when one employee of the principal insured is injured in the course of his employment in an accident arising out of his employer's business, by another employed by the same employer, whether such other's use of the automobile is within the scope of his duties or is outside of the scope of his duties with his employer's permission. That purpose would not be accomplished if we gave paragraph (a) the interpretation for which petitioner contends.

If in the writing of paragraph (a) it had been the intention to eliminate as insureds only those employees acting within the scope of their duties it would have been a simple matter to insert limiting language to that effect after the word "employee." Limiting language of that very character was used to qualify insureds of class (1) and was used again to qualify injured fellow employees in paragraph (a). In the absence of any such limiting language the word "employee" as used in paragraph (a) will be given its usual and ordinary meaning and will be held to refer to one who is employed by the principal insured.

Our interpretation of paragraph (a) accords with Appelman's statement of the purpose of such provisions. Insurance Law and Practice, Vol. 7, Sec. 4416, p. 240. It accords also with petitioner's own interpretation of the policy as a basis for this suit, it having alleged in its petition that Munroe was, on March 31st, "an employee of El Paso Motor Company" and that he was driving and operating the Ford automobile "while an employee of said Motor Company."

■ Petitioner contends that respondent lost its right to urge as a defense that Munroe was not an insured because it did not specifically allege in its answer that he was not an insured under the terms of the policy and did not assert that fact as a defense to the suit until it filed its second motion for judgment notwithstanding the jury's verdict. The question is governed by Rule 94, Texas Rules of Civil Procedure. That Rule requires affirmative pleading of certain defenses and continues: "Where the suit is on an insurance contract which insures against certain general hazards, but contains other provisions limiting such general liability, the party suing on such contract shall never be required to allege that the loss was not due to a risk or cause coming within any of the exceptions specified in the contract, nor shall the insurer be allowed to raise such issue unless it shall specifically allege that the loss was due to a risk or cause coming within a particular exception to the general liability; provided that nothing herein shall be construed to change the burden of proof on such issue as it now exists."

■ Respondent argues that the matter of who is insured under a policy of insurance is a part of the insurer's "basic promise," and that it was not the purpose of the quoted provisions of Rule 94 to require an insurer to allege that the person inflicting an injury was not covered by the basic promise. In support of its argument respondent cites Alamo Cas. Co. v. Richardson, Texas Civ. App., 235 S.W. 2d 726; writ refused, n.r.e. and Preferred Life Ins. Co. v. Stephenville Hospital, Texas Civil App., 256 S.W. 2d 1006, no writ history. The case first cited undoubtedly lends support to respondent's position. Petitioner, on the other hand, argues that the quoted provisions of Rule 94 require an insurer to plead specifically all exceptions to its "general liability" under a policy and that paragraph (a) of Section III provides an exception to respondent's general liability. In support of its argument petitioner cites National Security Life & Casualty Co. v. Benham, Texas Civ. App., 233 S.W. 2d 334, writ refused, n.r.e.; Camden Fire Ins. Ass'n. v. Moore, Texas Civ. App., 206 S.W. 2d 104, writ refused, n.r.e., and National Life

& Accident Ins. Co. v. Leverett, Texas Civ. App., 215 S.W. 2d 939, writ dism. We do not regard any of the cases cited by the parties as binding on this Court in its construction and application of the Rule and consequently see no need to analyze them.

Before the adoption in 1941 of our present Rules of Civil Procedure a system of pleading had developed in this state in which there was much "sand-bagging" of courts as well as of opposing litigants. The pleading device known as a "general demurrer" coupled with the general denial method of putting in issue rebuttal defenses and defenses based on exceptions and exclusions led to innumerable reversals, interminable delays and unnecessary expense. In adopting the Rules of Civil Procedure this Court sought to eliminate these road-blocks to a sound administration of justice. The general demurrer was abolished. Rule 90, Texas Rules of Civil Procedure. By Rule 279 a party was denied the right to a submission of special issues on rebuttal defenses in the absence of special pleading. Luther Transfer & Storage, Inc. v. Walton, 156 Texas 492, 296 S.W. 2d 750. In the same spirit the quoted provisions of Rule 94 were intended to eliminate hidden defenses to liability based on exceptions contained in insurance policies. The ultimate object of all of these changes in rules of pleading was to require a litigant, in so far as was reasonably possible, to put openly in issue on the trial of a case all of the reasons, in fact and in law, why the other party should not prevail.

Before the adoption of the Rules of Civil Procedure one suing on or for benefits under a policy of insurance was required to negative, in his pleading as well as in his proof, all of the policy exceptions to liability. Failure to do so was fatal. Pelican Fire Ins. Co. v. Troy Co-op. Ass'n., 77 Texas 225, 13 S.W. 980 (Exceptions to liability on a fire insurance policy) ; Travelers' Ins. Co. v. Harris, Texas Com. App., 212 S.W. 933 (Exceptions to liability on an accident insurance policy) ; Washington Fidelity Nat. Ins. Co. v. Williams, Texas Com. App., 49 S.W. 2d 1093. (Exceptions to liability on an automobile accident insurance policy) ; International Travelers Ass'n. v. Marshall, 131 Texas 258, 114 S.W. 2d 851 (Exceptions to liability on an accident insurance policy). The quoted provisions of Rule 94 were intended to supersede this rule of pleading established by court decisions.

Rule 94 requires an insurer, on penalty of waiving the issue, to allege specifically that the loss was due to a risk or cause coming within a particular exception to its general liability. The exceptions which the insurer must specifically plead are those

which limit its general liability for loss caused by the general hazards covered by the policy. In this case the general hazard covered by the policy, as applied to the facts, was the hazard of accidental injuries inflicted on persons through the use of the Ford automobile. Respondent's general liability was to pay on behalf of Munroe all sums he became obligated to pay as damages for such accidental injuries. By paragraph (a) of Section III respondent limited its general liability by providing, in effect, that the hazard of accidental injury to a fellow employee, in the course of his employment, arising out of the business of the employer was not covered by the policy. It thus appears that the provision limiting respondent's liability contained in paragraph (a) was precisely the type of limiting provision which respondent was required to plead on penalty of waiving its right to urge that provision as a defense to the suit.

Respondent argues, ultimately, that whether an exclusionary clause is a part of the "basic promise" which the insurer is not required to plead or is an exception to general liability which the insurer is required to plead is "usually entirely up to the draftsman" of the policy, and depends on the section of the policy under which the clause is placed. Under that theory the quoted provisions of Rule 94 could be nullified by including all exceptions to general liability under the definition of an insured. We cannot approve a theory that would accomplish that result.

The judgments of the Court of Civil Appeals and trial court are reversed and the cause is remanded to the trial court for the entry of judgment for petitioner.

Opinion delivered March 13, 1957.

Rehearing overruled April 17, 1957.