TRINITY UNIVERSAL INSURANCE
COMPANY, Appellant,

v.

C. A. TUBBS, Appellee.

No. 7005.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 27, 1960.

Rehearing Denied Jan. 23, 1961.

Cade & Bowlin, Lubbock, for appellant.

Crenshaw, Dupree & Milam, Lubbock, for appellee.

DENTON, Chief Justice.

This is a suit brought by C. A. Tubbs against Trinity Universal Insurance Company to recover under an insurance policy for damages to personal property caused by the driving of an automobile by the assured's son into the back wall of his ga-

210

rage. The case was tried before the court without a jury. Both parties filed motions for summary judgment, and after a hearing the trial court granted appellee's motion and entered judgment against the appellant insurance company for the stipulated value of the articles damaged. Both parties concede there are no disputed facts. Appellant duly perfected its appeal and brings forward two points of error.

On February 7, 1959, the 13-year old son of appellee proceeded to drive the family automobile from the driveway into the garage which was attached to the house proper. In moving the car into the garage, the young man failed to properly stop the forward movement of the car and it crashed into the back wall of the garage. The back wall of the garage was a common wall with a room of the house referred to as the den. The impact of the car caused extensive damage to the studs of the wall, breaking a hole in the wall and pushing the wall into the den and thereby knocking from the shelves along the wall various items of china, antique glassware and other fragile articles. The parties stipulated that the value of the damaged articles was $1,000.

The sole question presented here is whether or not the loss suffered by the insured was recoverable under the provisions of the insurance policy which was admittedly in full force and effect at the time the loss was sustained. To determine whether or not coverage is provided for in this instance, we must look to the following provision of the policy in question. Under "Exclusions" is the following clause:

"6. This policy does not insure * * * (c) against breakage of eye glasses, glassware, statuary, marbles, bric-a-brac, porcelains and similar fragile articles (jewelry, watches, bronzes, cameras and photographic lenses excepted), unless occasioned by theft or attempt thereat, vandalism or malicious mischief, or by fire, lightning, windstorm, earthquake, flood, explosion, falling aircraft, rioters, strikers, collapse of building, accident to conveyance or other similar casualty, nor unless likewise occasioned, against marring or scratching of any property not specifically scheduled herein;"

It is appellee's position that the accident is covered by the policy under any one of three provisions of the above quoted clause, namely: that the damage was the result of "accident to conveyance," that it resulted from a "collapse of building," and that it also can be said to have resulted from "other similar casualties." Appellant asserts the loss did not come within the exclusion clause, and that the loss was not one that was insured against under the policy.

There has been no Texas case cited and we have found none which has interpreted this particular clause quoted above. We must therefore look to cases decided in other jurisdictions as well as the established rules to be followed in interpreting insurance policies. The general rule is that contracts of insurance are to be strictly construed in favor of the insured, but this does not affect another general rule that contracts of insurance are to be construed as other contracts. The meaning to be given such contracts should be such as to carry out and effectuate to the fullest extent the intention of the parties. Burns v. American National Ins. Co., Tex.Com. App., 280 S.W. 762; Employers' Casualty Co. v. Langston, Tex.Civ.App., 214 S.W.2d 131 (error dismissed); McCann v. National Life & Accident Ins. Co., Tex.Civ.App., 226 S.W.2d 177 (error refused); 24-B Tex.Jur., Insurance, Sec. 27, p. 91. Another general rule in construction of insurance policies is that there should be a fair, reasonable and common sense construction of the language used rather than a strained or unnatural interpretation. Hall v. Mutual Ben. Health & Accident Ass'n, Tex.Civ. App., 220 S.W.2d 934 (error refused); T. I. M. E., Inc., v. Maryland Casualty Co., 157 Tex. 121, 300 S.W.2d 68. The usual and accepted meaning of language used in such contracts should be given by the court in the

absence of evidence to show a different meaning was intended. Pan American Ins. Co. v. Cooper Butane Co., 157 Tex. 102, 300 S.W.2d 651.

■ We shall first consider the phrase "collapse of building." As indicated, we have failed to find a Texas case which has construed this provision of an insurance policy, but several other jurisdictions have done so. The Georgia Court of Appeals in Great Eastern Casualty Co. v. Blackwelder, 21 Ga.App. 586, 94 S.E. 843, held that under an accident insurance policy which provides that the insurer would be liable if the insured is killed by the "collapse of a building," liability arises when the insured is killed by the collapse of any substantial portion of a building. The Appellate Court in Illinois, in Rubenstein v. Fireman's Fund Ins. Co., 339 Ill.App. 404, 90 N.E.2d 289, 290, had the same clause to interpret as that before us. There, a portion of insured's dining room ceiling (an area 6' x 6') had collapsed and fallen upon various items of personal property. The court there cited with approval the rule that the entire building must lose its distinctive character as a building before there is a "collapse of building" within the terms of the insurance policy. This interpretation seems to be rather narrow and strict even though other jurisdictions seem to follow this rule. We question the wisdom of applying such an interpretation of the phrase "collapse of building." However, the same Illinois court also cites at length from a Pennsylvania Supreme Court case of Skelly v. Fidelity & Cas. Co. of N. Y., 313 Pa. 202, 169 A. 78. The Pennsylvania court was construing a policy provision providing for double liability for bodily injury sustained "in consequence of the collapse of the outer walls of a building while the assured is therein." In that case the assured was injured when a loaded railroad car jumped the track and ran against the brick wall of a hotel building. The impact of the railroad car tore a hole in the side wall and ripped away a part of two walls. The other walls remained intact, and the building was standing with the hole torn in the wall. The court held that the outer walls of the building did not "collapse" within the meaning of the insurance policy. The court there concluded, "In ordinary speech, what happened to the walls would not be termed their collapse and no one would have so described the happening." In our opinion, the impact and damage caused by the automobile of the assured here was far less than that caused in the Skelly case. By following the so-called "substantial portion" doctrine rather than the stricter definition of "collapse of building," we conclude that the loss here cannot be said to have been caused by "collapse of building" as contemplated by the policy in question. Although considerable damage was caused to the wall of assured's home, we cannot say it constituted a "collapse of building" even under the more liberal definition approved in the Skelly and Blackwelder cases, supra.

■ We next consider the meaning of the exception "accident to conveyance." As far as we are able to determine only one case has passed on this particular phrase. The United States Court of Appeals, Fifth Circuit, in Weinberger Banana Co. v. Phoenix Assurance Co. Ltd. of London, 74 F.2d 539, had before it an insurance policy which included the provision "hurricanes and/or floods and/or accident to the conveyance." We see no significant difference between the phrase "accident to conveyance" as found in the policy before us, and "accident to the conveyance" as found in the Weinberger case. In the latter case the insured was seeking recovery of loss of bananas damaged while in transit on a railroad car. The train was delayed when two railroad bridges were washed out. It was this delay that caused the bananas to rot and become a total loss. No damage was done to the railroad car. The bananas were damaged solely by the delay caused by the railroad bridges being washed out, making them impassable. The court held any "accident to the conveyance" fairly warrants the inference that the word "conveyance" was intended to have its ordinary and common-

ly accepted meaning. In concluding that the loss was not due to the risk insured against, the court used the following language:

"If risks of accidents other than such as might happen to the car or cars on which the bananas were loaded had been intended to be insured against, it reasonably may be supposed that the typewritten rider which enumerated the risks insured against while the bananas were on land would have contained, instead of the words 'any accident to the conveyance,' some such language as 'any accident to the track, bridges, cars, or other railroad equipment causing loss or damage to the bananas,' or 'any accident resulting in loss or damage to the bananas while loaded on railroad cars.' "

Although the Weinberger case and the instant case can be distinguished on the facts, the policy provisions in the cases are for all practical purposes identical. We are also of the opinion the reasoning of the latter case is sound and should be followed here. When the ordinary and commonly accepted meaning is applied to the phrase "accident to conveyance" we must conclude that the parties did not intend to extend the risk to damage caused by an automobile crashing into the insured's home and damaging fragile glassware. To do so would place a strained construction on the words that were written into the policy.

Appellee urges in the alternative that if the loss was not the result of "collapse of building" or "accident to conveyance" it was occasioned by "other similar casualty." Certainly, this latter phrase was placed in the policy for a purpose, and its obvious purpose was to enlarge or broaden the risks to be covered by the policy. "Other" implies additional casualties than those listed. However, we must again examine the phrase in light of the general rules of construction of insurance contracts. Numerous cases have defined "similar" to mean "nearly correspond," "resembling in many respects," "somewhat like," and "having a general likeness." Royer v. Brown, 98 N.H. 42, 93 A.2d 667; City of Chicago v. Vaccarro, 408 Ill. 587, 97 N.E.2d 766; Rubenstein v. Fireman's Fund Ins. Co., supra [339 Ill.App. 404, 339 N.E.2d 290].

"Other similar casualty" cannot be construed to mean *any* casualty or accident that may occur to the personal property in question. The risk, to be insurable, must be corresponding or generally like those risks enumerated. As is so often the case, the rule is relatively simple but its application is difficult. There are simply no cases holding that certain circumstances or happenings are similar and others are dissimilar. This determination must necessarily be made in each particular case. After carefully reviewing this entire record, we are convinced the loss sustained by appellee did not come within the meaning of the term "other similar casualty." To hold otherwise would extend the terms of the insurance policy beyond the plain and ordinary meaning of the language contemplated by the parties. We conclude that the evidence did not show that the loss of appellee's personal property was due to a risk insured against by the insurance policy in question.

We therefore hold the trial court erred in granting appellee's motion for summary judgment. Judgment of the trial court is therefore reversed and judgment here rendered that appellee take nothing.

Reversed and rendered.