**LAWYERS SURETY CORPORATION and American Guarantee and Liability Insurance Company, Appellants,**

v.

**AMERICAN PUBLIC LIFE INSURANCE COMPANY and Southern National Life Insurance Company, Appellees.**

No. 5578.

Court of Civil Appeals of Texas, Waco.

Sept. 2, 1976.

Rehearings Denied Sept. 23, 1976.

Jackson, Walker, Winstead, Cantwell & Miller, James K. Peden, III, Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellants.

Paul D. Hoover, Winstead, McGuire, Sechrest & Trimble, Dallas, for appellees.

OPINION

JAMES, Justice.

This is a bond case. Plaintiff-Appellees are two life insurance companies, to wit, American Public Life Insurance Co. (hereinafter called "American Public") and Southern National Life Insurance Co., (hereinafter called "Southern National"). Defendant-Appellants are two bonding companies, namely, Lawyers Surety Corporation (hereinafter called "Lawyers Surety") and American Guarantee and Liability Insurance Co. (hereinafter called "American Guarantee").

American Public and Southern National had a general agent in Dallas, Texas, to wit, a corporation by the name of Business Professional Services, Incorporated, (hereinafter called "BPSI"). During the years

1972 and 1973 (the exact times being more particularly hereinafter shown) American Public and Southern National were insured under a life insurance company's blanket indemnity bond issued by American Guarantee and under two fidelity bonds issued by Lawyers Surety. The principal on the blanket bond and the two fidelity bonds was Jim Mitchell, who was president and sole stockholder of BPSI.

American Public and Southern National issue a policy known as a "Flexible Premium Deferred Annuity Plan." On April 21, 1972, American Public and Southern National each entered into a "Managing General Agent Contract" with BPSI, which provided an arrangement wherein BPSI had the right and responsibility to solicit annuity policyholders of Appellees, collect the premiums therefor, and forward the premiums to the respective home offices of American Public and Southern National after holding out BPSI's commissions to which it was entitled. As its compensation, BPSI was entitled to retain 60% of the initial premium of each policy sold and was required to forward 40% to the home office of the respective Plaintiff-Appellee entitled thereto. BPSI was entitled to retain 2% of all renewal premiums collected and was required to forward the remaining 98% to the respective Plaintiff-Appellee entitled thereto.

Premiums were paid by policyholders to BPSI, whose practice was to deposit these checks into BPSI's checking account, and to remit to Appellees the respective amounts to which they were entitled. Jim Mitchell was the regular authorized signatory on the BPSI checking account, and was the principal on the bonds made by Plaintiff-Appellants American Guarantee and Lawyers Surety.

Plaintiff-Appellees American Public and Southern National brought this suit against Defendant-Appellants Lawyers Surety and American Guarantee upon the fidelity bonds above-described for monies alleged to be due them from BPSI after BPSI had collected certain renewal premiums and had failed to remit to Appellees the 98% thereof due them.

Trial was had to a jury which found:

(1) That during the period between August 15, 1972, and August 15, 1973, BPSI received the following amounts as renewal premiums from the following individuals in the respective amounts indicated (all of these individuals were policyholders of Appellee American Public):

| | |
|---|---|
| Leroy F. Washburn | $1150.00 |
| Jack C. Burton | 715.00 |
| Vernon R. Caninenberg | 500.00 |
| John F. Finnell | 1340.00 |
| Thomas L. Peterson | 650.00 (and) |
| Marion L. Richter | 220.00 |

(2) That in 1973, BPSI received the following amounts respectively as renewal premiums from the following individuals (all of these were policyholders of Appellee American Public):

| | |
|---|---|
| Don R. Robinson | $ 500.00 |
| Dr. Julian Ellis Berry | 2475.00 (and) |
| John R. Carnes | 1130.00 |

(3) That BPSI's failure to remit constituted acts of fraud and dishonesty (fraud and dishonesty were defined by the trial court in language used by our Supreme Court in *Great American Insurance Co. v. Langdeau* (Tex.1964), 379 S.W.2d 62;

(4) That BPSI's failure to remit constituted acts of misappropriation;

(5) That BPSI's failure to remit constituted acts of willful misapplication;

(6) That BPSI's failure to remit constituted acts of theft;

(7) That during the period between August 15, 1972 and August 15, 1973, BPSI received the following amounts respectively from the following individuals (both of these individuals were policyholders of Appellee Southern National):

Lorene Marion Kerby    $250.00
Josie A. Latch          390.00

That BPSI's failure to remit constituted acts of:

(8) Fraud and dishonesty;

(9) Misappropriation;

(10) Willful misapplication; and

(11) Theft.

Based upon and pursuant to the jury's verdict, the trial court entered judgment in favor of Plaintiff Southern National against both Defendants jointly and severally, in the sum of $627.20; in favor of Plaintiff American Public against both Defendants jointly and severally, in the sum of $4483.50; and in addition thereto in favor of Plaintiff American Public against Defendant American Guarantee for the additional sum of $4022.90. From this judgment the Defendants American Guarantee and Lawyers Surety appeal. We affirm.

Appellants Lawyers Surety and American Guarantee each filed separate briefs.

American Guarantee asserts the following points of error:

(1) There is no evidence and no jury finding that the loss claimed by Appellees was covered by the bond issued by Appellant American Guarantee;

(2) There is no evidence, and insufficient evidence to support the jury's answers to Special Issues Nos. 3, 4, 5, 6, 8, 9, 10, or 11; and

(3) The insurance of American Guarantee was excess as to the $627.20 awarded to Southern National and the $4483.50 awarded to American Public, jointly and severally against both Appellants, and the trial court erred in refusing to render judgment that Appellees take nothing against American Guarantee as to such amounts. We overrule all of Appellant American Guarantee's points.

We revert to Appellant American Guarantee's first and second points. American Guarantee issued a life insurance blanket bond indemnifying both Appellees from losses occurring by reason of fraud or dis-

honesty of Jim Mitchell. As stated, the principal on the fidelity bond was Jim Mitchell, president and sole stockholder of BPSI. This blanket bond was issued in 1967 and was in effect at all times material to this lawsuit. Wade Dunivent, vice president of BPSI, testified that on August 11, 1973, he discovered shortages in BPSI's checking account, brought about by Jim Mitchell's personal expenditures, and that the shortages had to do with premiums due Plaintiff-Appellees. BPSI had only one checking account, that being in the North Dallas Bank and Trust Co., into which were deposited premium collections not only from Appellees, but also from five or six other life insurance companies with which BPSI had agency arrangements. It was out of this checking account that Jim Mitchell was supposed to remit to Appellees their 98% of each renewal premium collected by BPSI. Prior to August 11, 1973, Mitchell had written checks out of this BPSI account to purchase a Cadillac automobile for his personal use, as well as for some other personal expenditures. It was these unauthorized expenditures of Mitchell from the BPSI account that caused Dunivent to discover that shortages were taking place. Upon this discovery, Dunivent contacted officials of both Appellees, who in turn got in touch with their respective policyholders to see if they had paid their renewal premiums to BPSI. All of the individuals named in Special Issues Nos. 1 and 2 were policyholders of Appellee American Public; whereas the two individuals named in Special Issue No. 7 (Kerby and Latch) were policyholders of Appellee Southern National. Upon ascertaining that all these individuals had paid their renewal premiums to BPSI, Appellees requested that they furnish copies of their respective cancelled checks. This was done, and it is undisputed that each of such policyholders had paid his renewal premiums to BPSI, which payments had been deposited in the BPSI checking account in North Dallas Bank and Trust Co. In any event, the jury findings of these facts are not challenged.

At the time of trial, the BPSI checking account was closed, and there were no

funds in same. Appellees were never paid any of the money due them from the renewal premiums paid by the above-named individuals.

■ This is a case where it is uncontradicted that Jim Mitchell had the funds of the two indemnitees in hand and failed to remit. It has been held that the unexplained failure of an agent to remit to his principal the premiums collected by him (the agent) and due the principal, amounted to "fraud and dishonesty" within the meaning of the indemnity bond which the agent was under. *National Surety Co. v. McCutcheon* (Fort Worth, Tex.Civ.App.1925), 270 S.W. 1062, writ dismissed. This is on the theory that the funds held by the agent which belong to the principal are trust funds, and that a fiduciary relationship exists between the agent and the principal. See *Searle-Taylor Machinery Co., Inc. v. Brown Oil Tools, Inc.* (Houston Tex.Civ. App., 1st 1974), 512 S.W.2d 335, NRE. We recognize that our Supreme Court has held that to constitute fraudulent and dishonest conduct, the employee must have some degree of intent to perform the wrongful action, and there must be the physical act plus the mental state for there to be fraud. *Great American Insurance Co. v. Langdeau* (Tex.1964), 379 S.W.2d 62.

■ In the case at bar, we have the failure by Mitchell to remit to Appellees the funds which undisputedly came into his hands, which funds without question belonged to Appellees, coupled with Mitchell's unauthorized personal expenditures out of the bank account into which the renewal premiums were deposited. We are of the opinion and hold that this constitutes legally and factually sufficient evidence to support the jury's findings in question.

With reference to Appellant American Guarantee's third point: Appellant American Guarantee's blanket bond had this provision in its Section 11: "If the Insured carries or holds any other insurance or indemnity covering any loss or losses covered by this bond, the Underwriter shall be liable hereunder only for that part of such loss or losses which is in excess of the amount recoverable or recovered from such other insurance or indemnity _____."

■ What American Guarantee is saying is this: As to the recovery awarded Appellees for the period of time that both the bond of American Guarantee and the two bonds of Lawyers Surety were in force, that is, the recovery of $627.20 by Southern National and the recovery of $4483.50 by American Public, the trial court's judgment was joint and several against both Appellants. American Guarantee says that all of this recovery (the $627.20 and the $4483.50) should have been put upon Lawyers Surety alone, and that American Guarantee should have been excused therefrom, because of the excess provision in American Guarantee's bond. However, American Guarantee failed to affirmatively plead as a defense this excess clause before trial, and raised this defense for the first time in a motion opposing Plaintiffs' motion for judgment. This being a policy exception, and a matter in avoidance, American Guarantee's failure to affirmatively plead this defense constituted a waiver of its right to rely on such exception. Rule 94, Texas Rules of Civil Procedure; *T.I.M.E., Inc. v. Maryland Casualty Co.* (1957), 157 Tex. 121, 300 S.W.2d 68; *Fort Worth Lloyds v. Purcell* (Eastland, Tex.Civ.App.1975), 529 S.W.2d 644, NRE. All of Appellant American Guarantee's points of error are overruled.

Appellant Lawyers Surety's points of error assert that the jury verdict does not establish that Jim Mitchell, principal on Appellants' bonds, committed any acts within the scope of Lawyers Surety's bonds, and that there is no evidence to support the jury's answers to Special Issues Nos. 3, 4, 5, 6, 8, 9, 10, and 11. We overrule all of Lawyers Surety's points. Lawyers Surety's bonds were in effect for one year, from August 15, 1972 until August 15, 1973. The undisputed proof showed that all of the funds for which Lawyers Surety was held liable were derived from renewal premiums which BPSI had collected and deposited in the BPSI bank account prior to August 15, 1973. The two Lawyers Surety bonds in question in which Jim Mitchell was the

principal indemnified Appellees against losses through theft, misappropriation, willful misapplication, or any other act of fraud or dishonesty. Our discussion of Appellant American Guarantee's points of error applies also to Appellant Lawyers Surety's points.

All of Appellants' points and contentions are overruled. Judgment of the trial court is affirmed.

AFFIRMED.