NEWARK TRUST CO. et al. v. AGRICULTURAL INS. CO.

(Circuit Court of Appeals, Third Circuit. December 12, 1916.)

No. 2153.

INSURANCE ⬉423—TORNADO INSURANCE—POLICIES—CONSTRUCTION.

A policy, insuring against all direct loss or damage by windstorms, tornadoes, cyclones, or hurricanes, declared that the insurer should not be liable for any loss or damage caused by hail, driven by wind or not, snowstorms, frost, or cold weather, nor for loss or damage occasioned by fire, explosion, tidal wave, lightning, high water, overflow, cloudburst, or consequential loss. The policy further declared that the insurer should

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

not be liable for any loss or damage caused by water or rain, whether driven by wind or not, unless the building insured shall first sustain an actual damage by the direct force of the wind, and the insurer should then be liable only for such damage to the interior of the building as might be caused by water or rain entering through openings made by the direct action of the wind. The building insured was a frame dwelling built on brick foundations, standing close to the ocean on a low bluff arising from the beach. A bulkhead was built in front of it and to the sides to protect it from the wash of the sea. A great storm, in which the wind grew to the force of a hurricane, drove water at high tide onto the beach, destroying the bulkhead and cutting away the sand which supported the foundation. The wind then blew so hard that it shook the house, and the front of the foundation broke, causing the house to go down, where it was caught by the succeeding tide, broken to pieces, and carried to sea. *Held,* that the injury was plainly excluded from the terms of the policy; it being caused by water, though driven by the wind, instead of by the direct force of the wind.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1127; Dec. Dig. ☞423.]

In Error to the District Court of the United States for the District of New Jersey; Thos. G. Haight, Judge.

Action by the Newark Trust Company and Alfred Yankauer, trustee in bankruptcy of George E. Mausert, bankrupt, against the Agricultural Insurance Company. There was a judgment for defendant, and plaintiffs bring error. Affirmed.

Raymond, Mountain, Van Blarcom & Marsh and T. McCurdy Marsh, all of Newark, N. J., for plaintiffs in error.

Fairlie & Vanderbilt, of Newark, N. J. (Leo Levy, of New York City, of counsel), for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This is an action on a policy of tornado insurance. The jury rendered a verdict for the defendant upon the court's construction of the contract, which was embodied in the charge with the force of a binding instruction. The plaintiff sued out this writ, assigning as error so much of the charge as relates to the interpretation of the contract.

The insured property was situate at Monmouth Beach, New Jersey. It was a frame dwelling built upon brick foundations. It stood close to the ocean upon a low bluff arising from the beach. It was protected from the ocean by a bulkhead built fifty feet in front of it. This bulkhead was of timber, braced back into the land, and was about ten feet high. Connected with its two ends at right angles were "return bulkheads," running back from the ocean one hundred feet to a point inland about midway the house, built to protect the house from the side wash of the sea. The space within this built-up box like structure was filled with sand and was used as a lawn.

At midnight of January 2, 1914, a great storm began, increasing in intensity and lasting three days. The wind, blowing on shore, grew to the force of a hurricane. The storm was marked not only by wind of unusual velocity, but by unprecedented high tides. Ac-

cording to the testimony of the witness Lockwood, which was more favorable to the plaintiffs than any other, the storm increased with the first flood tide, and the wind "caused the sea to come in" and come up to and against the main bulkhead, forcing the planks off and knocking it out in front, and also caused the sea to reach around the south end of the bulkhead, cutting away the sand and washing it out. As this tide began to fall, "it left about eighteen inches of sand next to the house where the brick foundation was, but the wind blew so hard that it shook the house and the front of the foundation tumbled down and caused the house to go about 35 degrees angle down; then the tide fell, and it stayed there until the next tide." It was further testified that the second flood tide, being as high as the first, likewise swept around the bulkheads, further washed away the sand, and finding the house in its fallen position, broke it apart and carried it to sea.

At the time of its destruction, the house was insured by the defendant insurance company under what is commonly known as a Standard Tornado Policy. By this policy, the insurance company insured the owner against "all direct loss or damage by windstorms, tornadoes, cyclones or hurricanes, except as hereinafter provided." The risks excepted appear first in the following clause:

"This company shall not be liable for any loss or damage caused by hail, driven by wind or not, snowstorms, frost or cold weather; * * * nor for the loss or damage occasioned directly or indirectly by or through any fire, explosion, tidal wave, lightning, *high water*, overflow, cloudburst; * * * nor for any consequential loss of any kind."

The plaintiffs, in right of the insured, brought this action on the policy, upon the theory that the damage was occasioned by *wind* within the meaning of the general liability clause, and that the defendant is not saved by the clause exempting it from liability for damage caused by "high water," under a proper definition of that term, contending "that if there was high water (contributing to the damage to the building), the proximate cause of the damage was not such high water, but the wind which made the water high, and that the court should have charged the jury to that effect."

The court submitted to the jury the issue whether the damage was occasioned by wind or water, with appropriate instructions upon the law as to the defendant's liability upon either finding. The first instruction relates to the company's liability for damage caused by wind, under the issue fairly raised by the testimony of Lockwood as to whether the house was shaken down by the wind or was caused to fall by the action of the water washing away its foundations. This instruction is as follows:

"The plaintiff can only recover in this case after it has been established by the greater weight of the evidence * * * that the loss or damage to this house was the result of the direct action of this windstorm on the day in question."

No error, of course, is assigned to this instruction, for had the jury found that the damage had been done by wind, then the instruction fully covered the defendant's liability. But the verdict for the

defendant was a finding by the jury that water, and not wind, caused the house to fall, and with respect to the company's liability for damage caused by water, the court gave its second instruction, which appears in several places in the charge in different language, but always to the same effect, as follows:

"I have determined that a proper construction of the policy precludes the plaintiff from recovering if the damage to this house was due, directly or indirectly, to high water, irrespective of whether the high water was caused by wind or not."

The substance of the error charged to this instruction is, that under a proper construction of the contract of insurance, the defendant is liable for damage done by water when raised or driven by wind, and the jury should have been charged accordingly.

The plaintiffs' case rests upon their ability to take the cause of damage out of the clause of the policy exempting the company from liability, and place it in the clause imposing liability. To do this, they maintain that the words "high water," as used in the exempting clause, mean high tide in its commonly accepted sense, indicating only such high water as is reached by the tide in its normal and periodical flow, unaffected by winds and storms, Howard v. Ingersoll, 13 How. (54 U. S.) 381, 423, 14 L. Ed. 189; that in the instant case the water was made high, not by normal tidal influences, but by wind, the element insured against, and that in driving the water against the foundations of the house, the water was the passive and the wind the efficient force which proximately caused its destruction. They thus invoke the doctrine of proximate cause as applied in cases of insurance, Waters v. Merchants' Ins. Co., 11 Pet. 213, 9 L. Ed. 691; Ætna Ins. Co. v. Boon, 95 U. S. 117, 24 L. Ed. 395; The G. R. Booth, 171 U. S. 450, 19 Sup. Ct. 9, 43 L. Ed. 234; Louisiana Mutual Ins. Co. v. Tweed, 7 Wall. 44, 19 L. Ed. 65; Queen Ins. Co. v. Hudnut, 8 Ind. App. 22, 35 N. E. 397; Jordan v. Iowa Mutual Tornado Ins. Co., 151 Iowa, 73, 130 N. W. 177, Ann. Cas. 1913A, 266; Mitchell v. Potomac Ins. Co., 183 U. S. 42, 22 Sup. Ct. 22, 46 L. Ed. 74; and ask a construction of the words "high water" as employed in the policy and a determination of which force occasioned the damage.

If the liability clause and the quoted clause of exceptions constitute the whole of the company's undertaking, the inquiry as to the proximate cause of the damage, whether of wind or high tide, might be pertinent; but there is a second clause of exceptions, in which are included other elements with respect to which the company expressly refused to make itself liable. This clause is as follows:

"This company shall not be liable for any loss or damage *caused by water or rain, whether driven by wind or not,* unless the building insured  *  *  * shall first sustain an actual damage to the roof or walls of the same by the direct force of the wind, and shall then be liable only for such damage as to the interior of the building  *  *  * as may be caused by water or rain entering the building through the openings in the roofs or walls made by the direct action of the wind."

This clause, disclaiming liability, is as much a part of the contract as the clause assuming liability, and it must be considered in connection with all other expressions in seeking the sense and the scope of the contract. The insurance company states in the liability clause what it insures against, namely, "loss or damage by windstorms, tornadoes, cyclones or hurricanes." In order to make certain just what it insures against, it states by two other clauses what it does not insure against, first, "loss or damage occasioned directly or indirectly by * * * high water," and second, "loss or damage caused by water or rain, whether driven by wind or not," except in the one instance of damage caused by water entering an opening previously made by wind. The defendant's liability must be found within these three clauses. They are not ambiguous in their terms and are not fairly susceptible of two different constructions, and do not therefore call for interpretation under the familiar canons of construction, which incline to the insured and against the insurer. Insurance Co. v. Boon, 95 U. S. 117, 128, 24 L. Ed. 395; Thompson v. Insurance Co., 136 U. S. 287, 297, 10 Sup. Ct. 1019, 34 L. Ed. 408; Holmes v. Phœnix Ins. Co., 98 Fed. 240, 39 C. C. A. 45, 47 L. R. A. 308. They are related to one another not only in subject matter but by express terms of reference. They are in no sense inconsistent or conflicting, but are cumulative or rather explanatory of one another, and make clear what is insured against by reciting what is not insured against. Reserving any question of proximate cause, it is manifest from the terms of the contract, as well as from the enumerated elements, that the perils insured against are the perils of the air, and among those expressly excepted are perils of water; and that after disclaiming liability for damage caused by such specific water forces as tidal wave, high water, overflow and cloudburst, the insurance company broadly refuses to assume liability for any loss or damage caused generally by water, even when "driven by wind."

As the jury found that the house was destroyed by water and as the contract denies liability for damage "caused by water, whether driven by wind or not," the plaintiffs' case, based upon the theory of wind-driven water, comes within the second exempting clause and necessarily falls. We are of opinion that this clause dispenses with the consideration of the question of proximate cause as raised in this case, and that the court's construction of the contract as contained in the charge, was not erroneous.

The judgment below is affirmed.