## GLEESON et al. v. MERCURY INS. CO.
### Civil Action No. 4425.

District Court, E. D. Pennsylvania.
June 6, 1946.

Gerald A. Gleeson, U. S. Atty., and Abe J. Goldin, both of Philadelphia, Pa., for plaintiff.

Horace Michener Schell, of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

The policy was one of fire insurance, the coverage of which was extended by a rider "to include direct loss by windstorm * * *." This was the general insuring clause.

A subsequent provision of the rider excluded "loss occasioned directly or indirectly by or through any tidal wave, high water," and "any loss caused by water * * * whether driven by wind or not."

A general verdict for the defendant was accompanied by answers to special interrogatories submitted by the Court which disclosed, beyond question, that the jury found that the loss was not a direct loss by windstorm and, therefore, was not within the scope of the general insuring clause of the contract of insurance.

The first interrogatory and answer were: "Was the damage to the plaintiff's house caused directly by windstorm? No."

The fifth interrogatory and answer were: "Did the wind, at any time during the period from 3 o'clock to 5 o'clock at any point where the boardwalk broke and came in to shore, blow from any point in the south half of the compass? No." In other words, the wind was blowing *off-shore* during all relevant times. Consequently, it could not possibly have been the direct propulsive force which carried the boardwalk against the plaintiff's house.

These answers to the interrogatories seem to dispose completely of the basis for the plaintiff's motion for a new trial, which is alleged error by the Court in charging the jury as to the meaning of the term "high water." Whether or not the loss fell within the "high water" exception was, of course, immaterial in view of the finding that it was not a direct loss by windstorm and so not a loss insured against in the general insuring clause.

Incidentally, the jury did not find that the loss was occasioned through "high water." In answer to the 2nd, 3rd, 4th and 6th interrogatories, they found that the cause of the damage was "water"—findings which placed the loss squarely within the later provision exempting the Company from liability for "loss or damage caused by water * * * whether driven by wind or not." That was the clause upon which Newark Trust Co. v. Agricultural Ins. Co., 3 Cir., 237 F. 788, 791, turned, and the ruling in that case can be taken as another ground for denying this motion.

However, it might be worth while to point out that the definition of "high water" from Howard v. Ingersoll, 13 How. 381, 54 U.S. 381, 423, 14 L.Ed. 189, which the plaintiff wanted read to the jury, had no application to the situation before them and it would simply have misled them, because it would have given them the impression that the exception applied only to normal tidal fluctuations. The Supreme Court in Howard v. Ingersoll, supra, was talking about the high water mark in a case where a river had been adopted as a boundary line in a conveyance or cession of land. Obviously, for that purpose, it does not mean the extreme point to which the river might have risen once or twice in times of exceptional flood but, as the Supreme Court said, "the line is marked by the periodical flow of the tide." Certainly the exception in the present policy was not intended to be limited to the daily high tide. It would be hard to find a house built on the shore between the low and high tide marks, and to write a specific exception into a policy of windstorm, cyclone or tornado insurance, excluding damage done by ordinary high tide, would have been the height of futility. I must admit that my statement that "high water is high water" (assuming that that is what I said) was not especially enlightening, but I do not think it can be called erroneous. High water in this policy certainly includes the

kind of high water which the jury found caused the damage in this case.

The motion for a new trial is denied.