Clifford L. BERGLUND et ux., Appellants,

v.

HARDWARE DEALERS MUTUAL FIRE
INSURANCE COMPANY, Appellee.

No. 14381.

Court of Civil Appeals of Texas.

Houston.

June 25, 1964.

Rehearing Denied Sept. 10, 1964.

**632**

Plaintiff's dwelling at Bayou Vista was caused by or resulted from flood, surface water, waves, tidal water or tidal wave, or spray from any of the foregoing, whether driven by wind or not?

"Answer: 'No damage was so caused. or resulted'

or

'Damage was so caused or resulted'

"If you have answered Special Issue No. 1 'Damage was so caused or resulted', and only in that event, then answer:

"Special Issue No. 2

"What do you find to have been the percentage of the damage to Plaintiff's. dwelling which was caused by or resulted from such flood, surface water,. waves, tidal water or tidal wave, or spray from any of the foregoing,. whether driven by wind or not, if you have found that damage to Plaintiff's. dwelling was caused by or resulted from such force?

"Answer by stating the percentage,. if any you find, in figures from zero (0%) to one hundred (100%) percent."

Similar issues were submitted with reference to the boat house and the contents. of the dwelling. The jury found that water caused 70% of the damage to the dwelling,. 95% of the damage to the contents and 100% of the damage to the boat house. Judgment was entered based on this verdict.

Appellants' Points of Error are to the effect that there was no evidence, or insufficient evidence, to warrant the submission of the issues contained in the court's charge, and that the jury's answers to those issues are contrary to the great weight and preponderance of the evidence, and that the trial court erred in failing to submit certain requested issues.

Miller & Gann, Ralph K. Miller, Houston, for appellants.

Fulbright, Crooker, Freeman, Bates & Jaworski, Charles D. Boston, J. S. Covington, Jr., Houston, for appellee.

COLEMAN, Justice.

This is a suit to recover on two insurance policies the stipulated value of a dwelling, its contents, and a boat house, which were completely destroyed in September, 1961, during Hurricane Carla.

The case was submitted to the jury on six special issues. Special Issues Nos. 1 and 2 read as follows:

"Special Issue No. 1

"Do you find from a preponderance of the evidence that no damage to

Basically it is appellants' position that the trial court erred in the manner of submitting the cause to the jury because:

"(1) The proximate cause of their loss was a peril insured against—windstorm or hurricane—and that the immediate cause of the loss is immaterial, provided such windstorm or hurricane set in motion a series of events which, unbroken by any new and independent cause, produced such loss *and without which the loss would not have occurred.*

"(2) Water is a necessary, integral and inseparable component part of a hurricane and, therefore, damage cause by 'hurricane water', as distinguished from floods, surface waters, tidal waves, etc. or other 'non-hurricane water', is a risk insured against under the proper construction of Appellee's insurance policies.

"(3) Since the undisputed evidence establishes that one or more of the perils insured against—hurricane or windstorm—was the proximate cause of the loss, Appellants are entitled to judgment for the stipulated amount of their loss."

The court submitted the case to the jury on the theory that all of the damage suffered by the insured properties, the amount of which was stipulated, was covered by the insurance policies unless the damage was caused in whole or in part by perils excluded from coverage by the policies.

It is clear from uncontroverted testimony that during the night when the house was swept away, tidal water about five feet deep covered the area near the house. There were wind-driven waves and spray present at all times. The jury might have accepted the testimony that the winds had not reached hurricane force at the time the house was destroyed. Expert testimony was presented to the effect that wind-driven waves are much more destructive than wind alone

because the mass or weight of the water is much greater than that of wind.

Appellant requested that the trial court submit to the jury the following issue: "No. A. Do you find from a preponderance of the evidence that Hurricane Carla was the proximate cause of the damage to the dwelling house of Clifford L. Berglund and wife, Robbie Mae Berglund?" In connection with this issue the following definitions were requested:

"You are instructed that the term 'proximate cause', as used in this charge means the actual and dominant cause which sets in motion a series of events and which, unbroken by any new and independent cause, produces an event without which the event would not have occurred."

"By the term 'new and independent cause', as used in the foregoing definition of 'proximate cause', is meant the act or omission of a separate and independent agency which destroys the causal connection between the original cause and the event in question and thereby becomes, in itself, the actual cause of such event."

These issues and definitions were requested in line with appellants' theory that losses proximately caused by hurricanes are covered by the policies, and that the exclusions do not apply to losses resulting from the combined action of covered and excluded perils, i. e., hurricane winds and tidal waters, waves, etc., or partially from a covered peril, i. e., hurricane, and partially from an excluded peril, i. e., flood or surface waters, where the excluded perils were set in motion or activated by the hurricane. It has also been suggested that an insurance policy specifically offering protection against loss by hurricane necessarily protects against loss from surface water, tidal water, waves and spray since these things are as much a part of a hurricane as are the turbulent winds.

In United States Insurance Co. of Waco v. Boyer, 269 S.W.2d 340, the Supreme Court of Texas stated:

"In construing contracts, the time-honored method of the courts has been to search for the intent of the parties and this is true in cases construing insurance contracts just as in other contracts. While undoubtedly in the early days of the insurance business the actual intent of the immediate parties to the contract was material, now with the insurance business regulated and the policy forms prescribed by a State Insurance Commission, the court in construing a policy determines the every-day meaning of the words to the general public—the meaning of the words 'in common parlance'—'the usual and popular understanding of the term.' American Automobile Ins. Co. v. Baker, Tex.Civ.App., 5 S.W.2d 252, supra. * * * Therefore, a true search for what the courts usually speak of as the intent of parties will not be an inquiry as to what the words of the contract meant to this particular insurer or insured. It is, first, an effort to determine the ordinary lay meaning of the words to the general public, and, in the light of this meaning, it is, second, an examination of the choice the purchaser had and the choice he made. Glen Falls Ins. Co. v. McCown, 149 Tex. 587, 236 S.W.2d 108."

Section 1 of the policy provides that subject to the provisions and conditions of the policy, the Company insures the named insured against loss, including expenses incurred in the removal of debris resulting from such loss, from any of the Perils Insured Against. In a section entitled "Perils Insured Against" coverage for the dwelling is provided for "all risks of physical loss except as otherwise excluded." It is obvious from the wording of the paragraphs on "Deductibles" that one of the risks contemplated when this policy form was drafted was the risk of damage to a dwelling by reason of a hurricane. In Section 1 there is the further provision under the heading "Exclusions" that this insurance does not cover "loss caused by or resulting from flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water or spray from any of the foregoing, all whether driven by wind or not."

A possible construction of this policy is that the Company agrees to pay for all loss suffered by the dwelling caused by the risk of hurricane unless that risk is otherwise excluded. The Company does not agree to pay for loss caused to the dwelling by certain *risks* such as flood, or tidal water. The Company agrees to pay for all of the loss caused by a *risk* which is not excluded by the terms of the policy. The risk of a *loss* by reason of hurricane was not excluded. The risk of loss caused by flood waters or tidal waters was excluded. The quest, therefore, must be to determine the actual and dominant peril which destroyed the dwelling. If in this case the hurricane set in motion the series of events which, unbroken by the intervention of any new and independent cause, led to the destruction of the building, the loss was covered by the policy of insurance notwithstanding the fact that some of the loss probably resulted from surface water, waves and tidal water driven by wind. United States Ins. Co. of Waco v. Boyer, supra; Providence Washington Ins. Co. v. Proffitt, 150 Tex. 207, 239 S.W.2d 379; Farmers Insurance Exchange v. Wallace, Tex.Civ.App., 275 S.W.2d 864, ref., n. r. e.; Providence Washington Ins. Co. v. Cooper, Tex.Civ. App., 223 S.W.2d 329, ref., n. r. e.; Fireman's Ins. Co. v. Weatherman, Tex.Civ. App., 193 S.W.2d 247, ref., n. r. e.; American Indemnity Co. v. Haley, Tex.CivApp., 25 S.W.2d 911, writ dism.; Anno., 93 A.L.R. 2d 147, et seq.

We have carefully examined the cases relied on by appellee, and particularly Coyle v. Palatine Ins. Co., Tex.Sup., 222 S.W. 973, and are of the opinion that they are not controlling because of the different

language found in the insurance policies being construed. In the Coyle case the court found that the *risk* insured against was "all *direct* loss or damage by tornado, windstorm or cyclone", and that the policy expressly excepted from such risk "any loss or damage occasioned *directly or indirectly* by or through any * * * tidal wave * * * high water * * * overflow," and "*any* loss or damage caused by water or rain, whether driven by wind or not, * * *" (emphasis added) The court then held that since the damage in dispute resulted from the combined action of wind and water, even though the wind was the cause of the action of the water, no liability arose under the express provision of the policy that "the insurer was not to be responsible for any damage, whatever, due to the action of water caused by the wind." The court then said:

"Therefore, the rule invoked, that where there is no order of succession in time and there are two concurrent causes of a loss in which the damage done by each cannot be distinguished, the predominating cause will be deemed the proximate cause, can have no application. The water as a concurrent cause, or as any element in the cause, which produced the loss, is by the contract put out of the case."

█ We do not interpret the contract involved in this case as eliminating *loss* caused by water, unless water is the dominant and efficient cause of such loss.

█ The issues requested by appellants were ultimate issues and the trial court erred in refusing to submit them to the jury.

█ If the evidence raises a question as to whether part of the damage to personal property was caused by wind-driven rain, an appropriate issue establishing the proportionate part of the loss so caused should be submitted to the jury since the policy specifically provides that there would be no coverage in case of loss to personal property due to wind-driven rain, where a loss has been suffered by reason of hurricane or windstorm, except where the wind first makes an opening in the walls or roof of the house.

It will be noted that this provision, relating to loss caused by a hurricane or windstorm, also excepts from the coverage of the policy loss to cloth awning, green houses, windmills, radio and television towers, etc. Here *items of damage* are excluded from coverage as contrasted with exclusion "d" relating to flood, surface water, tidal water, etc., where *risks of damage* are excluded.

█ The policy covering loss to the boat house names the risks, including hurricane and windstorm, insured against, and provides: "* * * the Company shall not be liable for loss caused by * * * tidal wave, high water, or overflow, whether driven by wind or not." Loss caused by rain, whether driven by wind or not, was also excluded. These provisions were made applicable only to hail, windstorm and hurricane. Issues Nos. 5 and 6 were properly submitted over the objection that such issues were not raised by the evidence. While from the evidence the jury might reasonably have found that all of the damage was caused by high water or overflow, the evidence also leaves little doubt but that these conditions were brought about by the hurricane. Apparently it was contemplated that during hurricanes and windstorms there would be rain, and, in some places, high water and overflow water. Appellants contend that these conditions always accompany hurricanes, and we are persuaded that this contention is correct only in so far as the immediate coastal areas and low lying, poorly drained areas are concerned. But such conditions accompanying hurricanes can be anticipated in certain areas and, apparently, have been anticipated, and the exception under discussion has resulted. The part of the damage that results solely from the cause excluded must be determined. Policies of insurance are construed liberally in favor of the insured and exceptions and

limitations on liability will be strictly construed against the insurer. Providence Washington Ins. Co. v. Proffitt, supra. Since the case must be reversed and retried, we point out that only high water, overflow, tidal wave, and rain, whether wind driven or not, are excepted by the terms of the policy. The term "tidal wave" has a well-defined meaning and there is no evidence that damage could be attributed to such a cause. The charge should follow the terminology of the policy, but should submit only such elements as are raised by the evidence.

Since a retrial of this cause will be required, we think it unnecessary to discuss the Points relating to the sufficiency of the evidence to support the jury verdict.

The judgment of the trial court is reversed and remanded.