86 N.J. Super. 391 (1965)
207 A.2d 167
WALTER A. NEWMAN, JR., AND DAVID G. NEWMAN, PLAINTIFFS-APPELLANTS,
v.
GREAT AMERICAN INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 25, 1964.
Decided February 3, 1965.
*393 Before Judges GAULKIN, FOLEY and LEWIS.
Mr. Marvin D. Perskie argued the cause for plaintiffs (Messrs. Perskie & Perskie, attorneys).
Mr. Marshall Crowley argued the cause for defendant (Messrs. Toner, Crowley, Woelper & Vanderbilt, attorneys).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
Plaintiffs' beachfront summer home and its contents, located in Avalon, were destroyed on March 7, 1962 during a severe storm. Plaintiffs sued defendant for the loss upon a policy which covered "direct loss by windstorm." Defendant contended that the loss was not caused by windstorm but by the storm-tossed sea, or by the combined *394 action of wind and waves, for which it was not liable under its policy. The jury returned a verdict for defendant. Plaintiffs' motion for a new trial was denied and now they appeal.
The policy is a standard New Jersey fire insurance policy with "extended coverage" and "additional extended coverage" endorsements. The policy and the endorsements are lengthy and contain numerous "exclusions," "provisions" and "stipulations."
The extended coverage endorsement says:
"In consideration of the premium for this coverage as shown on the first page of this policy, and subject to provisions and stipulations (hereinafter referred to as `provisions') herein and in the policy to which this endorsement is attached, including endorsements thereon, the coverage of this policy is extended to include direct loss by WINDSTORM, HAIL, EXPLOSION, RIOT, RIOT ATTENDING A STRIKE, CIVIL COMMOTION, AIRCRAFT, VEHICLES, AND SMOKE.

* * * * * * * *
WATER EXCLUSION CLAUSE: This Company SHALL NOT BE LIABLE for loss caused by, resulting from, contributed to or aggravated by any of the following:
(a) flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not; * * *."
The "additional extended coverage" endorsement provides:
"In consideration of an additional premium, and subject to the provisions of * * * the Extended Coverage Endorsement * * * coverage is hereby extended to include direct loss by * * *

* * * * * * * *
8. Collapse of building(s) or any part thereof, including collapse caused by weight of ice, snow or sleet.

* * * * * * * *
THIS COMPANY SHALL NOT BE LIABLE:

* * * * * * * *
(B) As respects Perils * * * 8 * * * For loss caused directly or indirectly by * * * flood, inundation, waves, tide or tidal wave, high water, or overflow of streams or bodies of water, whether driven by wind or not."
Plaintiffs' first point is that the trial court erred in its charge to the jury and in refusing their requests to charge.
*395 Over the objection of plaintiffs, the trial court directed the jury to answer the following questions:
"1. Was all of the damage to plaintiffs' building and household and personal property caused solely and exclusively by the direct force of the wind?
2. Was all of the damage to plaintiffs' building and household and personal property caused solely and exclusively by flood, surface water, waves, tidal water, overflow of the Atlantic Ocean or spray from any of the foregoing, whether driven by wind or not?
3. Did all of the damage to plaintiffs' building and household and personal property result from the combined, joint action of, or was it contributed to or aggravated by flood, surface water, waves, tidal water, overflow of the Atlantic Ocean, or spray from any of the foregoing, whether driven by wind or not?"
The jury answered "no" to questions 1 and 2 and "yes" to question 3.
The judge charged the jury:
"In order for the plaintiffs to recover they have the burden to show by a fair preponderance of the evidence that the damage to the building and to the household and personal property, or some portion of such damage, was caused solely and exclusively by the direct force of wind, and that such damage was not caused by and did not result from and was not contributed to or aggravated by flood, surface water, waves, tidal water or tidal wave, overflow of the Atlantic Ocean, or spray from any of the foregoing, whether wind driven or not. * * *.
* * * If you find that the plaintiff has established, by a fair preponderance of the evidence, that the damage to the building and its contents or to some portion thereof was caused by direct force of the wind, but you also find that the plaintiff has not established by a fair preponderance of the evidence that such damage was not caused by or did not result from or was not contributed to or aggravated by flood, surface water, tidal water or tidal wave, overflow of the Atlantic Ocean, or spray from any of them, whether wind driven or not, then the plaintiffs are not entitled to recover such damage, since as I indicated in the beginning, the plaintiffs' burden of proof in this instance is a dual one, the inclusion of the wind and the exclusion of the water. If you find that the damage to plaintiffs' building and its contents was caused by or resulted from the combined joint action of the direct force of the wind and of flood, surface water, tidal water or tidal wave, overflow of the Atlantic Ocean, or spray from any of them, whether driven by wind or not, plaintiffs are not entitled to recover for such damage.
Now, ladies and gentlemen of the jury, I have used the term sole and exclusive, and in submitting to you written interrogatories as the *396 form in which your verdict will be arrived at, I have also used them. The term sole and exclusive shall be taken in its everyday connotation or meaning. The term would not include causes which were insignificant or minimal or remote in their effect. I have read certain language in these policies, caused, aggravated by, contributed to, resulting from, and I think that I should define those terms, since as I have indicated they are the contractual bases and form a portion of it. As used in the endorsement forming part of the contract of insurance, the following words have the following meanings. * * * Windstorm means a storm with an unusually violent wind. Caused by means that which produces an effect or result, that from which a thing proceeds and without which it would not exist. Resulting from means that which proceeded naturally and logically from a state of facts. Contributed to means that a state of facts takes share or part or helped to cause or aided in causing a result. Aggravated by means that a state of facts increased or intensified, or was made worse or more severe, a result."
Plaintiffs agree that they had to prove "direct loss by windstorm." However, they dispute that they had to prove that the loss was caused "solely and exclusively by the direct force of wind." The substance of their argument is stated in their brief as follows: "The plaintiffs are not asking this Court * * * to permit recovery for water damage; they are only asking that * * * recovery may be permitted for wind damage even when water may be a minor and secondary factor, particularly where [as plaintiffs claim was the case here] wind alone is of sufficient velocity to cause the damage unaided by water." They cite as expressive of their position the following from Anderson v. Connecticut Fire Insurance Co., 231 Minn. 469, 43 N.W.2d 807, 812 (Minn. Sup. Ct. 1950):
"Where an insurance policy expressly covers the risk of loss to a building from windstorm, liability for such loss is established where it is shown that the windstorm by its own unaided action was of sufficient violence to be the efficient and proximate cause of the damage or where, as the efficient and proximate cause  though not the sole cause  it brings about such a material weakening of the building that it collapses from [other causes], and which collapse would not have taken place had not the structure first been weakened by the wind. It is immaterial that the damage following from the efficient proximate cause may have been indirectly and incidentally enhanced by another cause expressly excluded from coverage."
*397 Plaintiffs requested certain charges which set forth their position rather differently:
"5. If you find that waves or windblown water, or water of any sort contributed to or aggravated plaintiffs' damage, but that their action was remote and not a direct-producing cause, then you may disregard such evidence.
6. If you find that wind and wind alone was the probable producing cause of plaintiffs' damage, then you are to find for the plaintiffs.
7. If you find by a preponderance of the evidence that wind, and wind alone was the proximate cause of plaintiffs' damage, then you are to bring in a verdict for the plaintiffs.
8. If you find by a preponderance of the evidence, that wind and wind alone was the sole cause of plaintiffs' damage at the exact moment of collapse of the house, then you are to bring in a verdict for the plaintiffs.
9. If you find that water or wind-driven water, or other water was not a proximate cause of plaintiffs' damage, but that the proximate cause of plaintiffs' damage was wind, you are justified in bringing in a verdict for the plaintiffs."
The judge refused the requests. He said that the substance of some of them had been included in his charge. The remainder he rejected.
Plaintiffs argue that if these endorsements be construed in the manner urged by defendant and charged by the judge, the endorsements are a fraud on the public. They argue that in New Jersey "Any storm accompanied by high winds along the * * * coast * * * is always accompanied by high tides and excess water in the streets," while inland the damage would rarely exceed the $50 deductible. However, the endorsements must have been approved by the Commissioner of Banking and Insurance, pursuant to N.J.S.A. 17:36-5.22. Under that statute it is the Commissioner's prerogative to reject an endorsement because it is "unjust, unfair [or] inequitable * * *." Once he accepts it, we must construe it as any insurance contract prepared by the insurer is construed. Herbert L. Farkas Co. v. New York Fire Insurance Co., 5 N.J. 604 (1950).
On the other hand, defendant argues that the language of the endorsements is "plain and unambiguous." We disagree. *398 We find the language of the two endorsements complex and ambiguous, and so have courts and insurance commentators elsewhere. See the address by Pinkney Grissom before the Section of Insurance, Negligence and Compensation Law of the American Bar Association, reported in the 1960 Proceedings of the Section, p. 71, and reprinted in the October 1960 Insurance Law Journal, p. 615. See also "Concurrent Causation In Insurance Contracts," 59 Mich. L. Rev. 1141 (June 1961); Note, 33 N.C.L. Rev. 288 (1955); Annotation, 93 A.L.R.2d 145 (1964).
However, our problem here is not whether the judge's charge would be correct under all imaginable circumstances, but whether it was prejudicially inappropriate to the facts at bar. Therefore, we must examine the evidence introduced and determine the issues which that evidence created.
The fact issue tried out by the parties was whether the loss was due to the wind alone or to waves alone or to a combination of both. The case was almost entirely a battle of experts. Plaintiffs' expert Greenberg testified that in his opinion the force of the wind overturned the building. Defendant's experts testified that the force of the wind was not great enough to do that, and that the only thing that could have caused it was the force of the waves. There was only one person, plaintiffs' witness Frank, who could be called an eye-witness, and his evidence also was offered to support the proposition that the damage was caused by the wind. Plaintiffs made no effort to distinguish between damage caused by wind and that caused by any other force; they denied that water was a substantial causative factor, and attributed all of the damage to the wind.
[The court then reviewed the evidence. It analyzed the testimony of plaintiffs' expert, Greenberg, and concluded it was properly stricken for the reasons hereafter set forth.]
Under these circumstances we hold that it was a proper exercise of the judge's discretion to strike Greenberg's testimony. Rule 4 of the Rules of Evidence adopted by the Supreme Court on September 14, 1964 provides: "The judge may in his discretion exclude evidence if he finds that its *399 probative value is substantially outweighed by the risk its admission will * * * create substantial danger of * * * misleading the jury * * *." Although the Rules of Evidence are not to be effective until July 1965, Rule 4 expresses the existing law. It is "a reflection of a discretion already vested in the trial judge which is well accepted in New Jersey law and not subject to controversy." See Report of the New Jersey Supreme Court Committee on Evidence, March 1963, p. 85. This is especially true as to expert testimony, for "not every `expert' is expert." Polulich v. J.G. Schmidt Tool Die & Stamping Co., 46 N.J. Super. 135, 149 (Cty. Ct. 1957). See Electric Park Amusement Co. v. Psichos, 83 N.J.L. 262, 266-268 (Sup. Ct. 1912); cf. Guzzi v. Jersey Central Power & Light Co., 12 N.J. 251, 256 (1953); Mitilenes v. Snead, 45 N.J. Super. 246 (App. Div. 1957).
Greenberg's opinion was not based on his learning or experience. He merely gave the results of calculations which he said he and others made, based on a formula obtained from a book and against which allowances had to be made for variables. Without disclosure of his computations, especially when they were demanded, there were no means by which the judge or the jury could gauge his veracity or the validity of his conclusions. The mere fact that a witness is an expert in a wide general field, like engineering, does not make everything he says admissible. It must appear that he knows what he is talking about with reference to the facts of the particular case. The opinion of an expert is worthless without underlying facts which support that opinion. Stanley Co. of America v. Hercules Powder Co., 16 N.J. 295 (1954); Rempfer v. Deerfield Packing Corp., 4 N.J. 135 (1950); Dwyer v. Ford Motor Co., 36 N.J. 487 (1962).
Greenberg was not competent to express an opinion that the wind was strong enough to overturn the house. At best he was competent only to make calculations upon which he could base such an opinion. Since he did not produce those calculations, or verify or make them himself, and since what he said about those calculations was too vague to support *400 his opinion, the judge was justified in striking his testimony. Cf. Standard Oil Company of California v. Moore, 251 F.2d 188, 221 (9 Cir. 1958); Emich Motors Corp. v. General Motors Corp., 181 F.2d 70, 83 (7 Cir. 1950), modified on other grounds 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951); Berthold-Jennings Lumber Co. v. St. Louis Iron & S.R.R. Co., 80 F.2d 32, 102 A.L.R. 688 (8 Cir. 1935).
[The court then reviewed the testimony of defendants' experts and held that plaintiffs' motion to strike that testimony was properly denied.]
In short, the issue presented by the proofs was not how much damage was caused to plaintiffs' house by wind and how much by water. Both sides proceeded on the basis that the damage was total and an indivisible unit, and the only question was whether it was caused by the wind alone. Plaintiffs conceded as much in their requests to charge #6, 7 and 9, and they say so in their brief: "* * * The expert testimony in this case of plaintiffs' expert Seymour Greenberg and that of the defendant-respondent's experts Joseph Lambert and Francis Davis went to the very heart of the issue and established the causal factor of plaintiffs' damage. This was the sole contested factual issue in the case." (Emphasis ours)
In the light of that issue and that posture of the proofs we turn to examine plaintiffs' attack upon the charge and the refusal to charge as requested.
Plaintiffs say, "By Request to Charge 5 to 9 inclusive, plaintiffs attempted to have the Court read into the Water Exclusion Clause the doctrine of proximate cause," and it was error to refuse the requests.
Plaintiffs do not make it clear what they mean by "the doctrine of proximate cause" as applied to the facts of this case. They cite cases which involved either facts or policies different than in the case at bar. Few of these cases are pertinent, for there is no universal principle to guide us in the interpretation of windstorm policies or in their application to all claimed losses. As Grissom, supra, points out, windstorm claims present four different possible fact situations *401 and each must be dealt with differently. Therefore, general statements in the cases are of little use unless they are read in the light of the facts of those cases. Grissom says:
"The loss for which recovery is sought under the windstorm section of the extended coverage endorsement seldom results from a single isolated cause, but rather from a combination of causes. Damage to the insured property may have been occasioned by a windstorm operating in conjunction with some cause expressly excluded in the policy as a basis of liability, such as waves, high water or snow. Or the interaction of a non-excluded cause, e.g. rainfall, and a windstorm may have produced the loss.
In either event, the initial question posed is simply one of causation  i.e., what was the specific manner in which the loss was occasioned? Four different possibilities exist in this regard, for the damage may have been (a) caused exclusively either by the windstorm or by the particular contributing cause; (b) produced by some other element propelled or driven by the windstorm; (c) occasioned by the contributing causes acting in succession to each other (one element of nature operative first, affording a predicate for later damage by the other); or (d) the result of the concurrent and simultaneous effect of the contributing causes. Once this primary question of causation has been resolved, further determination must then be made of the scope of the insurer's liability in whichever of the four possibilities is found to exist.
However, courts have often failed to recognize, and to maintain, the distinction between these four basic factual situations. Moreover, divergent positions have been taken concerning the limits of the insurer's liability in each instance, especially as to the last two named. Accordingly, it may be safely stated that this problem of contributing causes has become the most confused and uncertain area of the law pertaining to the scope of windstorm coverage." (at pp. 87-88)
Plaintiffs' brief seems to advance at least three distinct propositions. The first appears to be that, if the windstorm by its own unaided action would have caused the damage, the fact that other elements contributed a surplus of force to cause the damage is no defense even if the other elements are excluded by the terms of the policy. An example of this would be a hurricane accompanied by high tides and waves. If the hurricane would have destroyed the building even if there had been no other forces, the insurer is liable.
We do not disagree with this proposition, but here there was no basis in the evidence upon which to give such a charge.
*402 The second proposition advanced by plaintiffs appears to be that, if excluded forces did concur with the wind in causing the total damage but their contribution was "minor," "remote" or "insignificant," the insurer is liable for all of the loss, even if the amount of the minor, remote or insignificant damage can not accurately be evaluated. Assuming that proposition is valid, it has no application to the case at bar. In the first place the issue is, as we have said, not minor, remote or insignificant damage, but the cause of the total damage. Second, the judge did charge the jury to ignore "causes which were insignificant or minimal or remote in their effect."
Finally, plaintiffs appear to urge that, even if the proofs showed the damage to be due to the combined forces of wind and water, if wind was the "dominant" cause defendant is liable for all of the damage.
We are not sure what plaintiffs mean by the "dominant" cause as applied to the facts in this case. They attempt to draw an analogy from health and accident insurance cases, and say that the following excerpt from Mahon v. American Casualty Co., 65 N.J. Super. 148, 167 (App. Div. 1961), certification denied 34 N.J. 472 (1961), should govern the case at bar:
"* * * the test is whether the accidental injury, as contrasted with the contributing disease or bodily condition is the proximate or predominant cause of the disability or loss, sometimes additionally qualified as the active, efficient, dominant, originating or direct cause. Pervading such cases is the philosophy that if the accident is a more substantial contributing cause of the resultant disability or death than the disease, the latter being merely a condition thereof, recovery is allowed."
This analogy might be justified in some fact situations under a windstorm policy, as, for example, in cases in which the building had been weakened by age, improper construction or other causes prior to the windstorm, but it has no pertinence to the facts at bar. When the Supreme Court denied certification in Mahon, supra, it said it did so on the authority of *403 Kievit v. Loyal Protective Life Insurance Co., 34 N.J. 475 (1961). In Kievit the Supreme Court said that even in health and accident insurance cases a distinction may have to be drawn between cases "where a patent, active disease was found to have contributed with the accident to the resulting death" and those in which, "a latent, inactive condition or disease which was not accompanied by any symptoms * * * was precipitated or activated by the accident * * *." See also Linden Motor Freight Co. v. Travelers Ins. Co., 40 N.J. 511 (1963).
Here the issue was whether water, a patent, active force excluded by the policy, was the sole or a substantial factor in causing the loss. Therefore a charge based on any idea of a "dominant" cause would have been improper. In fact, as we have said, charges #6 and 7 which plaintiffs themselves requested contemplated proof of the action of "wind and wind alone."
Plaintiffs argue that it was plain error for the court to charge the jury that the burden was upon them to prove the damage to their house was not caused by the sea. They admit that we so held in Brindley v. Fireman's Insurance Company of Newark, N.J., 35 N.J. Super. 1 (App. Div. 1955), but they argue that if Brindley cannot be distinguished (and we think it cannot) a "sound policy dictates a reversal" of Brindley.
On the contrary, we adhere to Brindley. To prevail on a policy such as this, the insured must prove a "direct loss by windstorm." If the insured introduces evidence of a loss due to windstorm, the burden is upon the insurer to come forward with evidence that the loss was due to an excluded cause; but if either in the insured's or the insurer's case evidence appears which tends to prove that the loss was due to a cause other than windstorm, or to an expressly excepted cause, the burden is upon the plaintiffs to overcome that evidence. In the case at bar the evidence tended to prove not only that the sea contributed substantially to cause the damage but that it was the sole cause of the damage. Therefore, *404 it became plaintiffs' burden to prove that the sea was not the sole or a substantial cause of the loss.
Assuming that the burden was upon them, plaintiffs argue that it was prejudicial error to describe that burden as being one to show that the loss was caused "solely and exclusively" by the direct force of the wind. The words "solely and exclusively" do not appear in the policy, and we agree that they should not have been used in the charge. However, in view of the evidence and the issues, we do not think the plaintiffs were prejudiced by their use.
Finally, plaintiffs argue it was error to refuse the charges which they requested, quoted above. We think the substance of #5, 6, 7 and 9 were given. Under the evidence and the issues in this case, #8 was properly denied.
The judgment is affirmed.