**HARDWARE DEALERS MUTUAL INSUR-
ANCE CO., Petitioner,**

v.

**Clifford L. BERGLUND and Robbie Mae
Berglund, husband and wife, Respondents.**

No. A–10418.

Supreme Court of Texas.

June 23, 1965.

Rehearing Denied July 21, 1965.

Fulbright, Crooker, Freeman, Bates & Jaworski, Charles D. Boston, Newton Gresham, with above firm, Houston, for petitioner.

Miller & Gann, Austin Y. Bryan, Jr., Houston, for respondents.

NORVELL, Justice.

This is a Hurricane Carla case. Petitioner, Hardware Dealers Mutual Insurance Company, issued two insurance policies to respondents, Clifford L. Berglund and his wife, Robbie Mae Berglund; one contained both an "all risks" clause and a "named peril clause," while the second policy contained a "named peril" clause only. The "named peril" clause covered direct losses by "windstorm, hurricane, hail," etc. On September 11, 1961, as a result of the storms, high winds and waters accompanying the hurricane, much of respondents' property was destroyed. Suit was brought upon the policies mentioned and after trial to a jury, respondents were awarded a recovery for $1,820.00 which represented the only items of damage which were not related to the excluded hazards named in the policies. This judgment was reversed by the Court of Civil Appeals and the case remanded for another trial. 381 S.W.2d 631. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

The paramount question before us relates to the construction of the contracts between the parties. However, there is one procedural matter raised which we think is settled by cases decided prior to 1941 and the provisions of Rule 94, Texas Rules of Civil Procedure. The insurance company pleaded that the damage sustained by respondents was not covered by the policies because the causes of such damage were expressly excluded from the insurance coverage of the contracts.

One of the policies contains an "all risks" coverage clause relating to a beach house located in the Bayou Vista Addition to Hitchcock, Texas. Respondents cite Jewelers Mutual Insurance Company v. Balogh, 272 F.2d 889 (5th Cir.1959) and argue that it is authority for the proposition that when a recovery is sought under an "all risks" policy, and the plaintiff proves that property described in the policy has been lost or damaged, the burden shifts to the insurer to show that the loss arose from a cause which is excluded from the policy coverage. In other words, when an "all risks" policy is sued upon, the plea of loss by an excluded risk is treated as being similar to a plea of confession and avoidance. There is logic in this position and *Balogh* does not stand alone in support thereof. Annotation, "All Risks" Insurance—Coverage, 88 A.L.R.2d 1122, 1. c., § 6, Burden of Proof, p. 1129. However, *Balogh* was a Florida case tried in the federal court and our Rules of Civil Procedure preclude a shift of burden of proof from the insured to an insurer even though an "all risks" policy is involved.

In Pelican Ins. Co. v. Troy Co-op. Ass'n, 77 Tex. 225, 13 S.W. 980 (1890) it was held that the party suing upon an insurance policy has the burden of proving that the insurance policy covered the loss and hence it was incumbent upon him to prove that the loss was not excluded from the insurance coverage. This Court said:

"The provisions of the policy above noticed are exceptions to the general liability assumed by appellant [the insurer], and the petition should have averred that the fire did not occur from one of the excepted

causes. This was necessary to show a cause of action * * *."

The use of an "all risks" clause in stating the "general liability" of the company calls for no change of the rule set forth. If it be necessary for a plaintiff to aver that the loss did not occur from one of the excepted causes, in order to state a cause of action, it would be necessary for him to prove the same in order to recover.

The rule of the Pelican case insofar as pleading is concerned was modified in 1941 by the adoption of Rule 94 as a part of the Texas Rules of Civil Procedure. The rule provides that when a suit is brought upon a policy "which insures against certain general hazards, but contains other provisions limiting such general liability, the party suing on such contract shall never be required to allege that the loss was not due to a risk or cause coming within any of the exceptions specified in the contract, nor shall the insurer be allowed to raise such issue unless it shall specifically allege that the loss was due to a risk or cause coming within a particular exception to the general liability; *provided that nothing herein shall be construed to change the burden of proof on such issue as it now exists*." (Italics supplied)

Here the insurance company pleaded specific exclusions which were set forth in the policy and thus raised issues of contract coverage. The burden of producing evidence to demonstrate that their losses were not attributable to the pleaded excluded hazards rested upon respondents. Shaver v. National Title & Abstract Co., 361 S.W.2d 867 (Tex.Sup.1962); T. I. M. E., Inc. v. Maryland Casualty Co., 157 Tex. 121, 300 S.W.2d 68 (1957). See 8 Texas Bar Journal 36 (1945). As the matter is specifically covered by Texas decisions and our Rules of Civil Procedure, cases based upon the practice rules of other jurisdictions have little or no application here.

One of the policies sued upon covers a beach house and certain unscheduled personal property. Insofar as the beach house was concerned, the contract insured Mr. and Mrs. Berglund against loss from "all risks of physical loss except as otherwise excluded."

This policy also covered certain unscheduled personal property and insured Mr. and Mrs. Berglund against loss from certain named perils, including among others, "Windstorm, Hurricane and Hail."

A second policy covered a boathouse and under the heading, "Extended Coverage," insured Mr. and Mrs. Berglund against loss from, "Windstorm, Hurricane, Hail, Explosion, Riot, Civil Commotion, Smoke, Aircraft and Land Vehicles."

The first policy contains the following exclusion (which was pleaded by the company) viz.:

"D. Loss caused by or resulting from: "(1) Flood, surface water, waves, tidal water or tidal wave, overflow of streams or of other bodies of water, or spray from any of the foregoing, all whether driven by wind or not; * * *."

The second policy contains a similar exclusion (which was pleaded by the company) viz.:

"Unless specifically named herein, this Company shall not be liable for loss * * * caused by * * * tidal wave, high water, or overflow, whether driven by wind or not; * * *."

The parties stipulated that: "The amount of damage to the dwelling [the beach house] in question was $6,000 and the applicable amount of deductible is $100. The amount of damage to the contents in question was $2,400. The amount of damage to the boathouse in question was $450 and the amount of deductible is $100."

The trial court submitted the case to the jury upon issues inquiring as to the per-

centage of loss relating to each item which was occasioned by specifically excluded perils. As to the percentage of damage which was caused by or resulted from "flood, surface water, waves, tidal water or tidal wave, or spray from the foregoing, whether driven by wind or not," the jury found 70 per cent as to the beach house, 95 per cent as to the unscheduled personal property and 100 per cent as to the boat-house. Judgment wass accordingly rendered for 30 per cent of $6,000, less $100, plus $120, making a total of $1,820.00.

The general theory of submission employed by the trial court is supported by Coyle v. Palatine Insurance Company, Tex. Com.App., 222 S.W. 973 (1920) in which the judgment recommended by the Commission of Appeals was adopted by the Supreme Court in an opinion written by Chief Justice Phillips setting forth the Supreme Court's views with reference to the case. It appeared that a building situated in Galveston, Texas, owned by B. A. Coyle and J. H. Langbehn and insured by Palatine Insurance Company was damaged by a coastal storm which was attended by high winds and wind-driven water. The policy insured against damage by "tornado, windstorm or cyclone," but expressly excluded loss " 'occasioned directly or indirectly by or through any * * * tidal wave * * * high water, overflow, or cloudburst;' * * * whether driven by wind or not * * *." The company admitted liability for the damage caused solely by the wind. The parties stipulated that the remainder of the damage was caused by the combined action of wind and water and that the extent to which each was a factor could not be determined from the evidence. In approving the judgment for the insurance company recommended by the Commission, Chief Justice Phillips, speaking for the Supreme Court, said:

"It may be admitted, as the plaintiffs in error urge, that the wind was the cause of the action of the water. But, as related to the loss in dispute, the contract expressly provided that the insurer was not to be responsible for any damage, whatever, due to the action of water caused by the wind. All part of the loss caused by water, though the water's action was due to the wind, is thus eliminated. Therefore, the rule invoked, that where there is no order of succession in time and there are two concurrent causes of a loss in which the damage done by each cannot be distinguished, the predominating cause will be deemed the proximate cause; can have no application. The water as a concurrent cause, or as any element in the cause, which produced the loss, is by the contract put out of the case."

The opinion of the Commission of Appeals refers to Newark Trust Company v. Agricultural Insurance Company, 237 F. 788 (3rd Cir. 1916). This was a case involving a hurricane loss and an insurance policy which expressly mentions "hurricanes." The policy insured against "all direct loss or damage by windstorms, tornadoes, cyclones, or *hurricanes*, except as hereinafter provided." The policy contained an exception which provided that the company "shall not be liable for any loss or damage caused by water or rain, whether driven by wind or not * * *." The court affirmed a judgment in favor of the insurer, and after stating that the insuring and exclusionary clauses were unambiguous (and not conflicting) the Circuit Court of Appeals said:

"[I]t is manifest from the terms of the contract, as well as from the enumerated elements, that the perils insured against are the perils of the air, and among those expressly excepted are perils of water; and that after disclaiming liability for damage caused by such specific water forces as tidal wave, high water, overflow and cloudburst, the insurance company broadly refuses to assume liability for any loss or damage caused generally by water, even when 'driven by wind.' * * * We are of opinion that this clause dis-

penses with the consideration of the question of proximate cause as raised in this case * * *."

■ The respondents contend that the Coyle case is distinguishable from the case now before us because of a difference in wording contained in the policy involved in *Coyle* and the wording of the contracts now before us. We have heretofore set out the wording of the insuring and excluding clauses of such policies. The "named peril" insuring clauses expressly cover direct losses resulting from "windstorm, hurricane, hail" etc. As direct losses from hurricanes are not in so many words excluded from the "all risks" clause contained in the policy covering the beach house, such losses are within the comprehension of the "all risks" provision, subject to the exclusion clauses of the contract. In *Coyle* there was no reference to losses by "hurricane" and the exception to the coverage employed the words, "directly or indirectly." Respondents describe such policy as an "inland windstorm" policy and seek to distinguish it from policies of the type now before us. Their theory of contract construction and theory of recovery is well illustrated by the special issue submission requested by them, viz.:

"Do you find from a preponderance of the evidence that Hurricane Carla was the proximate cause of the damage to the dwelling house of Clifford L. Berglund and wife, Robbie Mae Berglund?"

Definitions of proximate cause and new and independent cause were likewise requested. The proximate cause instruction requested was as follows:

"You are instructed that the term 'proximate cause,' as used in this charge means the actual and dominant cause which sets in motion a series of events and which, unbroken by any new and independent cause, produces an event without which the event would not have occurred."

It is apparent that the insurance coverage of the contract would be substantially broadened if respondents' theory of construction be accepted. In essence it would mean that all hurricane damage, whether caused by wind or water, or by a combination of both would be covered by the policies provided a hurricane is the dominant or proximate cause of the destruction or loss of the property described in the insurance policy; whereas, under the theory adopted by the trial court the insurance coverage would extend to wind damage unmixed with water damage occasioned by the hurricane. Cf. McDonald v. New York Central Mutual Fire Ins. Co., 380 S.W.2d 545 (Tex.Sup.1964).

In support of their position, respondents assert that a West Indian or Gulf Hurricane is a phenomenon in which high winds are invariably accompanied by heavy rains and high water; that the insuring clauses of the policies purport to cover hurricane damage, and that an interpretation of the water exclusion clause so as to exclude water damage caused by a hurricane would create an ambiguity and invoke the rule that insurance contracts should in cases of doubt or ambiguity be construed favorably to the insured. This is the argument that was accepted by the Court of Civil Appeals and while it is persuasive, there are considerations which compel its rejection.

From an underwriting standpoint, there is a vast difference between insuring against loss by hurricane winds only and insuring against loss by a combination of hurricane winds and waters. From a standpoint of verbiage, there is little difference between the wording of the exclusion clause before us now and that which this Court construed in *Coyle*. In the Coyle policy the word "hurricane" does not appear. The insuring clause mentioned "damage by tornado, windstorm or cyclone." The "named peril" clauses here involved mention direct loss from "windstorm, hurricane," etc. As loss from hurricane is not expressly excluded as such by the "all risks" clause, we may say that loss from hurricane

is within the insuring clause of such policy. As illustrative of the problem, we may consider this question: Can it reasonably be said from the wording of contracts which contain water exclusion clauses, that a policy covering loss by windstorm does not cover loss from high water, or overflow, whether driven by wind or not, while a policy covering loss from hurricane does cover loss from high water or overflow when a hurricane is the dominant cause of such high water or overflow?

In Mitchell's Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775 (1957), it was asserted that an indemnity contract should be construed favorably to the indemnitor. This Court said:

"In determining the rights and liabilities of the parties, therefore, their intention will first be ascertained by rules of construction applicable to contracts generally. At this point neither party is favored over the other simply because their agreement is one of indemnity."

 We believe the rule stated is applicable here. No ambiguity or uncertainty arises from the words used in the contract. In order to say that water damage accompanying a hurricane is not excepted from the policy it would be necessary to give the words of the exception—high water and overflow, etc.—a different meaning when used with an insuring clause covering losses from "tornado, windstorm, and cyclone" than they would have when used with an "all risks" type of insuring clause or one covering losses from "windstorms, hurricane, hail," etc. In our opinion this cannot be accomplished unless we refuse to give to words their ordinary accepted meaning and disregard the interpretation of phrases in standard insurance use which have been considered in prior opinions of this Court. The language used in the policies "must be construed according to the evident intent of the parties, *to be derived from the words used,* the subject-matter to which they relate, and the matters naturally or usually incident thereto," and it is only when "the words admit of two constructions, that one will be adopted most favorable to the insured." Brown v. Palatine Insurance Company, 89 Tex. 590, 35 S.W. 1060 (1896). See 13 Tex.Jur.2d 287, Contracts, § 122.

The exclusion clauses involved in this suit have been used as a part of property insurance policies for many years. The clause was involved in the case of Newark Trust Company v. Agricultural Insurance Co., 237 F. 788 (3rd Cir.) decided in 1916 and heretofore referred to. That case specifically mentioned loss or damage by *hurricanes* and was cited with approval by the Commission of Appeals in Coyle v. Palatine Insurance Company, 222 S.W. 973 (1920). Since the decision in the Coyle case, the construction of the exclusionary clause must be regarded as settled in Texas. Cf. Newman v. Great American Insurance Company, 86 N.J.Super. 391, 207 A.2d 167 (1964); Brindley v. Firemen's Insurance Co. of Newark, 35 N.J.Super. 1, 113 A.2d 53 (1955). The risk assumed by a policy construed under the rules of the Coyle case is vastly different from that of a policy which would insure against all damage proximately caused by a hurricane. The feasibility of providing a broad coverage "hurricane" policy for a fifty or hundred mile coastal strip, considering the necessary premium charges therefor, may present a question for the industry and the regulatory authorities, cf. United States Insurance Company of Waco, Texas v. Boyer, 153 Tex. 415, 269 S.W.2d 340 (1954), but it is our duty to construe and enforce contracts and not to make them.

Cases in which an insurer has been held liable for a loss proximately caused by a peril insured against, although a hazard not covered by the policy was also involved, are not apposite here. See Providence Washington Ins. Co. v. Proffitt, 150 Tex. 207, 239 S.W.2d 379 (1951); Farmers Ins. Exch'g v. Wallace, 275 S.W.2d 864 (Tex. Civ.App.1955, wr. ref. n. r. e.). These

cases and those similar thereto incidentally involved risks for which no coverage had been purchased. They are not express exclusion cases such as Coyle v. Palatine Insurance Company, 222 S.W. 973, supra.

For the reasons hereinabove set forth the judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

## ON MOTION FOR REHEARING

The motion for rehearing is not cast in the mold which is most familiar to us, in that respondents complain because we have followed precedent rather than disregarded it. With vigor and ability it is again asserted that Coyle v. Palatine Insurance Company, Tex.Com.App., 222 S.W. 973, is a voice from the "mauve period in the history of the United States," and is a mistaken one at that. We are reminded of the words of Lord Atkin in the House of Lords case of United Australia, Ltd., v. Barkclay Bank, Ltd., [1941], A.C. 1; [1940] 4 All E.R. 20:

"When these Ghosts of the past stand in the path of justice clanking their medieval chains, the proper course for the Judge is to pass through them undeterred. We act in the finest common law tradition when we adopt and alter decisions of law to produce common sense justice."

■ However, when problems of contractual clauses are involved, precedent is necessarily a highly important factor. Contracting parties generally select a judicially construed clause with the intention of adopting the meaning which the courts have given to it. For the reasons stated in our original opinion, we decline to overrule Coyle v. Palatine.

■■ In deference to the motion it should be stated that we do not hold nor did we intend to infer that Rule 94 "binds this Court to freeze forever the burden of proof" relating to the exclusionary clauses of an insurance policy. By its express terms, the rule provides that it shall not "be construed to change the burden of proof on such issue as it now exists." The rule relates to pleadings, but impliedly recognized that there was a doctrine extant in this State which controlled the burden of proof at the time the rule was adopted. The argument over the *onus probandis* relating to exceptions from the general liability assumed in an insurance policy is an old one and is not altered by the use of an "all risks" clause which is simply a statement of general liability in its broadest form. In Travelers' Ins. Co. v. Harris, 212 S.W. 933 (Tex.Com.App.1919, holding approved by the Supreme Court) the problem was thoroughly considered with the citation of numerous authorities and it was said:

"* * * Those courts which treat the contracts as being general, and the clauses declaring what they shall not cover as 'stipulations added to the principal contract to avoid the promise of the insurer by way of defeasance or excuse,' hold that these clauses are defensive, and must be pleaded and sustained by the insurer; while the courts which construe the exception clauses as 'taking something out of the general portion of the contract, so that the promise is to perform only what remains after the part excepted is taken away,' place the burden of pleading and proof upon the assured to negative them by showing that his cause of action does not come within the exception. (Here follows citation of authorities.)

"In view of the decisions by our Supreme Court, and the indication made in granting the writ in this case, we are of the opinion that the burden rests upon the plaintiff to show that her cause of action does not fall within the excepting clause."

The question of the burden of proof has been settled by the holdings of this Court

and must remain so until numerous prior decisions are overruled or otherwise abrogated. Rule 94 simply recognizes this circumstance.

Respondents' motion for rehearing is overruled.