200 So.2d 440 (1967)
FIREMEN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY
v.
Mr. and Mrs. H.A. SCHULTE.
No. 44411.
Supreme Court of Mississippi.
May 22, 1967.
Suggestion of Error Overruled July 10, 1967.
William M. Frisbie, Bay St. Louis, Watkins & Eager, William F. Goodman, Jr., Jackson, for appellant.
Gex, Gex & Phillips, Joseph Benvenutti, Bay St. Louis, Satterfield, Shell, Williams & Buford, Jackson, for appellees.
JONES, Justice:
Appellees sued appellant on an insurance policy alleging destruction of their home by windstorm during Hurricane Betsy, September 10, 1965. They recovered a judgment in the circuit court from which judgment this appeal. The pertinent provisions of the policy read:
"EXTENDED COVERAGE * * *
"In consideration of the premium for this coverage, and subject to the provisions herein and in the policy to which this Extended Coverage is attached including endorsements thereon, This Policy is Extended to Insure Against Direct Loss by Windstorm, * * * Except as Hereinafter Provided. * * *
* * * * * *
"* * * This Company shall not be liable for loss caused by, resulting from, contributed to or aggravated by any of the following 
(a) flood, surface water, waves, tidal water or tidal wave, overflow of streams *441 or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not; * * *"
Appellant contended that the policy did not cover this loss because of the provision that the Company should not be liable for loss "caused by, resulting from, contributed to, or aggravated by * * *" those matters enumerated in subsection (a).
We are affirming the case because we find that whether there was a direct loss by windstorm unaffected by subsection (a) was a question of fact for the jury.
There was evidence to support its finding for appellees. Their home was on the Mississippi Coast at Waveland. It was generally conceded the area in which the appellees' home was located was lower than the surrounding area, and that flood water got into this area. However, there was evidence showing the following: Appellees' house was located on Terrace Road and was the second house off the beach; it was well constructed; gravel had been unloaded in appellees' yard the afternoon before the night when destruction of the house occurred, and the gravel remained there after the storm. A family by the name of Gianelloni lived in a home estimated to be from two blocks to 400 or 500 feet north of appellees' home, and two doors south of what will hereinafter be referred to as the Von Antz home. It was shown by witnesses that there was no water in the street near the Gianelloni home until after midnight. Between 11:00 and 11:30 p.m. a noise was heard, variously described by the several witnesses as "like a freight train" or "like a water spout" or a "roaring noise" or a "terrible howl" or "sort of like a train rolling in." This noise was different from that which had been theretofore accompanying the blowing of the wind and lasted, by various estimates, from fifteen or twenty seconds to a full minute. Pine needles were driven into the wall of the house near that of the Schultes. The house next door lost its porch which was never found. The home of appellees was completely destroyed. Its roof as well as the roof of a house nearby was found some distance north, near the Von Antz home. Appellant claimed that the debris, including the roof and other items of the Schulte home found up Terrace Road near the Von Antz home had been floated there by water. There was evidence that the water on Terrace Road was only to the Von Antz driveway which was level with Arlington Street, the first street north of the Schultes home. Terrace Road, the street on which Schulte's property abutted was a foot or more lower than the Schultes property, and the Schultes house, in addition, was built on concrete blocks. At the Von Antz home, there were flying limbs and pieces of houses. It was shown that there was a large, black object unidentifiable in the dark in the street in front of the Von Antz house; that they tried to see with flashlights, but could not because of the darkness and the hard wind. This was prior to the arrival of water in the street. Von Antz watched to see if the black object moved and it did not. When daylight came, the black object was identified as the roof of the Schulte home. There was a white picket fence on the other side of the street. Some of the Schultes furniture was found inside this fence, and it was shown that water did not go over the fence. Some of the Schultes furniture was in the Von Antz yard in a place where water did not go.
At the Lucas home hereinafter mentioned, the appliances therein were carried in different directions; the washing machine, dryer and roofing went out behind the house and a 500-pound gas range went out in front of the house. At another place, there was a pecan tree, 24 inches in diameter with limbs six inches in diameter, and the limbs were broken off; large trees at other places were down; some houses in the area were destroyed and some left standing. The town hall, about 1200 feet from the Schultes house, vibrated from the force of the wind, and the marshal testified *442 that he never had known it to vibrate so much. One place some 300 feet from the Schultes home had windstorm damage for which the insurance company paid. There was no objection to this evidence, if it were inadmissible.
The jury could further believe from the testimony of the postmaster which was corroborated by the facts hereinabove stated and by the testimony of several witnesses as follows:
The postmaster's house was from a mile to one and a quarter miles west from the Schultes home; about 6:45 to 8:00 p.m. before he left home three of his window panes on the southside were blown out. About 8:30 p.m. he went to Waveland town hall and joined with civil defense workers traveling in and out of various areas of Waveland. About 10:30 or 11:00 p.m. he and three other men traveled the area of Coleman Avenue which was the west boundary of the block where the Schultes house was, Terrace Drive, which the Schultes house faced, and Hillcrest, one block east of Terrace. They could hear windows "popping out" in several places. There was about one foot of water at that time. He and others helped Mr. Lucas remove articles from his home. Around 11:00 p.m. they heard a crash, which sounded like thunder, more or less, and a wind that sounded like it was "whistling through a screen, except it had a low hum  something like a big diesel engine." They walked outside and part of the roof was gone (estimated at 12 x 15 feet). There was no water in the Lucas house, which was about 400 to 500 feet at the most northeast of the Schultes house. He undertook to give an estimate of the speed of the wind, but objection was sustained. He then described it as a severe windstorm. They returned to the Lucas home about 1:00 or 2:00 a.m. and the only part left was its concrete pillars. There was no water on the Lucas lot, and two other houses on the lot were intact. The water at that time had risen about 1.0 feet. He estimated the water in Terrace Road then at four feet. Terrace Road in front of the Schultes home was 2.9 feet above sea level and the Schultes home was 4.2 feet above sea level.
Appellant offered evidence tending to show the damage was caused by water within the exclusionary portion of the policy.
The case was presented to the jury on instruction submitting to it the question as to whether the loss was caused directly by reason of windstorm, or whether water, even if driven by wind, either caused or contributed to, or aggravated the plaintiff's loss. The jury returned a verdict for plaintiffs-appellees for the full amount thereby finding that the loss was a "direct loss by windstorm" and that the loss was not caused by, did not result from, nor was contributed to, nor aggravated by water, whether driven by wind or not.
A motion for a judgment notwithstanding the verdict was made by appellant and was overruled by the court. The judge, however, did state he was of the opinion a judgment for the full amount was against the overwhelming weight of the evidence and that he would grant a new trial on that ground, if requested to do so. Appellant did not make such a request, the sole argument being that the loss was not covered by this policy.
Some cases dealing with this or similar provisions and either indicating or finding that an issue of fact was presented by somewhat similar facts are: Ebert v. Pacific National Fire Ins. Co., 40 So.2d 40 (La. App. 1949); Continental Ins. Co. v. Kouwenhoven, 242 Md. 115, 218 A.2d 11 (1966); Newman v. Great American Ins. Co., 86 N.J. Super. 391, 207 A.2d 167 (1965); Gillis v. Sun Ins. Co., 238 Cal. App.2d 408, 47 Cal. Rptr. 868 (Dist.Ct.App., 1st Dist., 1965); Royal Ins. Co. v. Martinolich, 179 F.2d 704 (5th Cir.1950); and, Home Ins. Co., New York v. Sherrill, 174 F.2d 945 (5th Cir.1949).
*443 We find there were conflicts in the evidence presented by appellant and appellees; that there was sufficient evidence on the part of appellees to make a jury issue. Therefore, the case is affirmed.
Affirmed.
GILLESPIE, P.J., and RODGERS, BRADY, and SMITH, JJ., concur.